Margaret GREENE, et al., Plaintiffs,

v.

Bruce BABBITT, et al., Defendants.

No. C89–645Z.

United States District Court,
W.D. Washington.

Oct. 15, 1996.

Russel L. Barsh, Law Office of Russel L. Barsh, Anacortes, WA, for Plaintiffs.

R. Anthony Rogers, U.S. Department of Justice, Environment and Natural Resources Division, General Litigation Section, Washington, DC, Katrina C. Pflaumer, United States Attorney, Brian C. Kipnis and Christopher L. Pickerell, Assistant United States Attorneys, Seattle, WA, for Defendants.

James B. Weber, Office of Tribal Attorney, Swinomish Indian Tribal Community, La-Conner, WA, for Amicus Curiae.

Douglas Lewis Bell, James H. Jones, Jr., Bell & Ingram, P.S., Everett, WA, for Intervenor–Plaintiff and Intervenor–Defendant.

## ORDER

ZILLY, District Judge.

### *INTRODUCTION*

On November 8, 1995, Assistant Secretary of the Interior Ada Deer issued a Final Determination for Federal Acknowledgment of the Samish Tribal Organization as an Indian Tribe pursuant to 25 C.F.R. Part 83. In accordance with 25 C.F.R. § 83.9(h), the Secretary gave formal notice on March 29, 1996 that the Samish Tribal Organization exists as an Indian Tribe within the meaning of federal law, and published that notice in the Federal Register on April 9, 1996. 61 Fed.Reg. 15825–26. In connection with her decision to grant federal tribal recognition, the Assistant Secretary of the Interior rejected certain findings made by the Administrative Law Judge, David Torbett.

The plaintiffs, Margaret Greene and the Samish Indian Tribe, have brought this supplemental action pursuant to 5 U.S.C. § 706, alleging that the Department of Interior violated the Fifth Amendment Due Process Clause and § 553 of the Administrative Procedure Act (5 U.S.C. § 553), in connection with the federal acknowledgment process. Plaintiffs allege specifically that prior to issuing her final decision Assistant Secretary Ada Deer, the agency official responsible for

making the recognition decision,[1] met ex parte with Scott Keep, the agency lawyer who represented the Bureau of Indian Affairs at the hearing before the Administrative Law Judge. Mr. Keep and his expert witness, who was also present at the ex parte hearing, urged Assistant Secretary Deer to deny tribal recognition to the Samish and to reject certain findings made by the ALJ. After that ex parte meeting, Assistant Secretary Deer granted the Samish tribal recognition but rejected certain findings that Mr. Keep urged her to reject. By motion (docket no. 276), the Samish seek to reinstate certain of the findings rejected by the Assistant Secretary. The defendants have cross-moved for summary judgment on all of plaintiffs' claims.

The Court, having considered the briefs and supplemental responses of the parties to the five questions raised by the Court's Minute Order of April 22, 1996, and having considered the arguments of counsel at the hearing on July 18, 1996, now GRANTS plaintiffs' motion, reinstates certain Findings of the Administrative Law Judge, and finds government attorney Scott Keep in contempt of court for the reasons stated in this opinion. The Court DENIES the defendants' cross-motion.

## BACKGROUND

The Samish people's quest for federal recognition as an Indian tribe has a protracted and tortured history,[2] and their long journey for recognition has been made more difficult by excessive delays and governmental misconduct.

The official journey began when the Samish Tribal Organization ("Samish") filed their first Petition for federal acknowledgment in 1972, after Congress began conditioning eligibility for most programs benefitting American Indians upon status as a tribe recognized by the federal government. Federal acknowledgment of tribal existence by the Department of Interior is a "prerequisite to the protection, services, and benefits of the Federal government available to Indian tribes by virtue of their status as tribes." 25 C.F.R. § 83.2 (1995). The Department of the Interior took no action on the Samish application until 1979, one year after the Department of Interior published its final regulations governing the procedure for official recognition of Indian Tribes.[3] Ultimately, on November 4, 1982, the Assistant Secretary of Indian Affairs published a notice concluding that the Samish should not be recognized. After several years of further delay, a final decision denying tribal recognition was published in the Federal Register on February 5, 1987. See 52 Fed.Reg. 3709. The significance of this decision was that the Samish did not exist as an Indian tribe for federal purposes.

In April 1989, the Samish tribe and Margaret Greene, its Chairman, brought an action in this Court challenging on Fifth Amendment due process grounds the decision denying recognition. On February 25, 1992, this Court vacated the decision denying recognition to the Samish and remanded the recognition petition for a formal adjudication under § 553 of the Administrative Procedure Act ("APA"). See Greene v. Lujan, 1992 WL 533059 (W.D.Wash.1992), aff'd, 64 F.3d 1266

1. The determination of the Assistant Secretary is final and becomes effective 60 days after a notice appears in the Federal Register unless the Secretary of the Interior requests a reconsideration by the Assistant Secretary—Indian Affairs pursuant to 25 C.F.R. § 83.10(a)–(c). The final notice was published in the Federal Register on April 9, 1996 (61 Fed.Reg. 15825). A Supplemental Notice of Final Determination was published on May 29, 1996 (61 Fed.Reg. 26922).

2. In 1979, this Court in United States v. State of Washington, 476 F.Supp. 1101, 1106 (W.D.Wash. 1979), aff'd, 641 F.2d 1368 (9th Cir.1981), cert. denied, 454 U.S. 1143, 102 S.Ct. 1001, 71 L.Ed.2d 294 (1982), entered various findings which found in part that members of the Samish

Indian Tribe did not "live[ ] as a continuous separate, distinct and cohesive Indian cultural or political community," and had "not maintained an organized tribal structure in a political sense." The Court then concluded that the Samish were not entitled to fishing rights. Id. at 1111. After this decision, the Government began to deny nonfishing benefits to the Samish. As a result, the Samish sought federal recognition as a tribe pursuant to 25 C.F.R. Part 83.

3. The new regulations were codified at 25 C.F.R. Part 83. Under those 1978 regulations, the Department of Interior conducted its own research, accepted ex parte submissions, and made final decisions without any hearing.

(9th Cir.1995). The Court noted in its remand order that there was evidence suggesting that "some of the decision makers prejudged the case."[4] The Ninth Circuit, in affirming this Court's ruling, stated:

Informal decision-making, behind closed doors and with an undisclosed record, is not an appropriate process for the determination of matters of such gravity.

64 F.3d at 1275.

Prior to formally remanding the case to the Secretary, this Court directed the parties to meet and attempt to agree on the procedures that would govern remand. The parties met and agreed to procedures which they set forth in a Joint Status Report. The Joint Status Report provided in part:

The parties agreed that, following the hearing on remand, the ALJ will make written findings of fact, together with a recommendation to the Assistant Secretary—Indian Affairs as to whether the Plaintiffs are an Indian tribe, based only on the existing administrative record and the testimony produced at the hearing.

The parties further agreed that either party, or amicus curiae, may submit written comments on the findings and recommendations to the Assistant Secretary—Indian Affairs, within 30 days, and that within 60 days of receiving the findings and recommendation of the ALJ, the Assistant Secretary shall either adopt or reject them, and issue a new decision as to the status of Plaintiffs. If he rejects them, he shall state the basis for that rejection in writing.

Joint Status Report dated July 8, 1992 (docket no. 191) at 12. At a hearing to review the terms of the Joint Status Report, this Court approved the procedures agreed to by the parties. Transcript of Hearing held on September 18, 1992 (docket no. 214) at 47. The procedural protections agreed upon by the parties were especially important because the recognition regulations contained in 25 C.F.R. Part 83 mandate inquiry into the "social and political structure of the petitioning tribe," matters that are "inherently complex and prone to mischaracterization." Order dated February 25, 1992 (docket no. 169) at 18.

Upon remand to the agency, the matter proceeded to a hearing before Administrative Law Judge David L. Torbett. At the hearing, which lasted from August 22, 1994 to August 30, 1994, both sides presented expert witnesses and other evidence. After the hearing, on August 31, 1995, Judge Torbett issued an exhaustive opinion. The opinion contains four parts: (1) a summary of the evidence (pages 4–18); (2) a discussion and recommendation (pages 18–23); (3) an appendix discussing the burden of proof, and (4) an appendix enumerating 205 proposed findings of fact (44 pages). The Proposed Findings substantiated that the Samish met the mandatory criteria for federal acknowledgement as set forth in 25 C.F.R § 83.7. The ALJ's opinion and recommendations were then sent to the Assistant Secretary of the Interior for a final determination.

On November 8, 1995, Assistant Secretary Ada Deer issued her final decision pursuant to 25 C.F.R. Part 83 that the Samish Tribal Organization existed as an Indian Tribe. The Final Determination rejected, however, certain proposed findings of the ALJ.

Plaintiffs now challenge the proceedings before the Secretary on remand, claiming the government violated the Administrative Procedure Act and their due process rights under the Fifth Amendment. The challenge involves undisputed events which occurred after the Administrative Law Judge issued his findings and recommendations on August 31, 1995, but before the Assistant Secretary issued the Final Determination on November 8, 1995.

It is undisputed that on November 8, 1995, before a final determination, Scott Keep, an attorney with the Solicitor's Office, Department of the Interior,[5] and Dr. Roth, the

---

4. The Court's original concerns about possible prejudice were founded in part on the fact that the decision maker met ex parte with government witnesses and advocates opposed to tribal recognition.

5. Mr. Keep is an experienced attorney with the Solicitor's Office of the United States Department of Interior. He has represented the Bureau of Indian Affairs, which opposes tribal recognition for the Samish, throughout these

government's expert witness, had an ex parte meeting with Assistant Secretary Deer [6] for the purpose of attempting to persuade the Assistant Secretary to reject the Administrative Law Judge's recommendation of federal recognition.[7] Mr. Keep also gave Assistant Secretary Deer written arguments, which he had prepared, and a proposed draft of the Assistant Secretary's decision. *See* Barsh Decl, docket no. 328, Exs. G, H and I. These ex parte conversations with Assistant Secretary Deer occurred behind closed doors, and no transcript or record of the proceedings was ever made.[8] In addition, no effort was made to notify the Samish of these meetings, either before or after they occurred, and it was only months later that the Samish learned of these events after the final decision had been made. Although the Assistant Secretary ultimately concluded that the Samish should be recognized, Keep was successful in having the Assistant Secretary reject certain proposed findings of fact which are of vital importance to the Samish.[9] The Assistant Secretary instead adopted certain findings drafted and recommended by Mr. Keep.

The Assistant Secretary not only considered the information revealed during ex parte meetings, but also considered several other ex parte materials submitted both before and after she rendered her decision in November 1995. The Tulalip Tribe submitted comments, dated October 10, 1995, Exhibit D to Declaration of Russel L. Barsh, docket no. 328; and the Swinomish Community and the Upper Skagit Tribe sent submissions after the Assistant Secretary's action. *Id.* at Exhibits E and F.

At the hearing on July 18, 1996, during oral argument on the cross-motions for summary judgment, the Samish narrowed their complaint by specifying that they have been prejudiced by Deer's rejection of three particular proposed findings. These include the ALJ's findings that (1) part of the Noowhaha tribe merged with the Samish (*see* ALJ Recommended Decision at 22; Final Determination dated November 8, 1995, at 12–13, 32); (2) many of the Samish families that settled on the Swinomish Indian Reservation did not relinquish their Samish affiliation (*see* Final Determination at 35, and references to record contained therein); and (3) the Department could not adequately explain why the Samish had been omitted from a list of federally recognized tribes prepared during the 1970s (*see* ALJ Findings 1–3; Final Determination at 16, 38–39).

With respect to the first finding, the ALJ had found:

> The Noowhaha tribe and the Samish were at one time different tribes. Dr. Suttles and Dr. Hadja testified that the two tribes had combined probably around 1850 and they had been one tribe since that time. This conclusion of Dr. Suttles and Dr. Hadja is controverted by the Defendants but the undersigned is convinced that the conclusions drawn by these two witnesses is sound.

ALJ Recommendation dated August 31, 1995, at 22. This finding supports recognition criterion 25 C.F.R. § 83.7(e), which mandates proof that "petitioner's membership consists of individuals who descend from a

---

extended proceedings. Mr. Keep represented the Department of Interior during the original proceedings before this Court. Keep was also counsel for the government at every stage of the remand proceedings, including the August 1995 hearing before the Administrative Law Judge.

6. Mr. Robert T. Anderson, Associate Solicitor, Division of Indian Affairs, was also scheduled to attend but was unable to do so. Anderson had full knowledge of the proposed meeting and its purpose. *See* Barsh Decl. Ex. J.

7. During oral argument before this Court on July 18, 1996, the government's lawyer, R. Anthony Rogers, conceded that had Keep been successful

in persuading the Assistant Secretary to deny recognition, such actions would have been a violation of the Administrative Procedure Act. TR. at 39.

8. The government attorney also conceded at oral argument that in the absence of a record, we will never know what was said. Mr. Rogers admitted that this ex parte meeting constituted a fundamental violation of the Administrative Procedure Act. TR at 41.

9. In rejecting the challenged proposed findings, the Assistant Secretary adopted language virtually identical to the language proposed by Mr. Keep. *See* Declaration of Russel L. Barsh, docket no. 328, at Exhibit I.

historical Indian tribe or from historical Indian tribes which combined and functioned as a single autonomous political entity." It also supports criterion 25 C.F.R. § 83.7(b), which mandates proof that "a predominant portion of the petitioning group comprises a distinct community and has existed as a community from historical times until the present." The ALJ's finding was based on his evaluation of the testimony presented at the hearing, including a weighing of the evidence and assessment of the credibility of the witnesses.

With respect to the second finding, the ALJ had found:

> Dr. Hadja explained that, although many Samish Indians had held public office on the Lummi and Swinomish Reservation, they continued to consider themselves as Samish and participate in Samish activities.... While individual members of Samish families living today on reservations, such as the Edwards, may have given up their Samish identity, Dr. Hadja felt that on the whole they had not (TR: 869). Samish leaders living at Swinomish were active in Swinomish affairs as a way of gaining personal prestige, and not as a declaration of Swinomish identity (TR: 1004, TR: 1021–1022).

Finding 169 in Appendix B to ALJ Recommendation. This finding supports recognition criterion 25 C.F.R. § 83.7(b), which mandates proof that the petitioner has maintained a "distinct community." It also supports recognition criterion 25 C.F.R. § 83.7(c), which mandates proof that the tribe has "maintained political influence or authority over its members...."

Finally, with respect to the third proposed finding, the ALJ found:

> A list prepared in the late 1960s by Ms. Simmons, a BIA employee, was the basis on which groups were then classified as Federally-recognized or not, but she admitted that records of Area and Agency comments have been lost (TR: 351–352). Subsequently, her revised list was 'generally' consulted to determine groups' legal status, although paradoxically she conceded that she had no authority to make such decisions.... On further questioning Ms. Simmons conceded that she had no

personal knowledge of the legal status of the groups she had listed under the Portland Area.... The earliest official references Dr. Hadja found to the tribe not being federally recognized appeared in the [early 1970s] (TR: 849).

Findings 2, 3, and 21 in Appendix B to ALJ Recommendation. This finding supports recognition criterion 25 C.F.R. § 83.7(a), which mandates a demonstration that "[t]he petitioner has been identified as an American Indian entity on a substantially continuous basis since 1900." Under 25 C.F.R. § 83.7(a)(1), supporting evidence may include evidence of "[i]dentification as an Indian entity by Federal authorities."

The Assistant Secretary rejected each of the three findings, as well as several others, after the ex parte meeting with Mr. Keep and the government's expert witness. The Samish urge this Court to reinstate these three findings.

### ANALYSIS

*1. The Samish Have Standing.*

 The government argues that because the Samish prevailed on their petition for federal recognition, they have no standing to challenge the Assistant Secretary's Final Determination. In order to have standing, a plaintiff must show some "actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979). Here, the Samish were harmed because Assistant Secretary Deer's rejection of certain proposed findings may have preclusive effect in future litigation concerning Samish membership, claims to tribal territory, and possible government liability for past benefits. *See* II Davis & Pierce, *Administrative Law Treatise* § 13.4 (1994) ("[c]ourts routinely apply collateral estoppel to issues resolved by agencies"). Although a "party's desire for better precedent does not by itself confer standing to appeal," *HCA Health Services of Virginia v. Metropolitan Life Ins. Co.,* 957 F.2d 120 (4th Cir.1992), in this context, the injury is sufficient.

The focus and result of the ex parte contact between the government lawyer and Assistant Secretary Deer was to eliminate findings that would be favorable to the Samish in connection with their eligibility for benefits under federal law. A holding that the Samish lack standing would necessarily imply that the Court is powerless to review misconduct in the administrative decision making process. The Court concludes that the government's argument on standing is without merit, and the plaintiffs have standing in this case.

## 2. *The Government's Action Constitutes a Violation of Law*

In 1992, this Court held that the Samish were entitled to Fifth Amendment due process in connection with their recognition proceedings. The Court therefore remanded this matter to the Bureau of Indian Affairs for a formal adjudication under § 553 of the APA (5 U.S.C. § 553). The Samish now challenge the proceedings before the Assistant Secretary of the Bureau of Indian Affairs, claiming they violated the APA and Fifth Amendment due process.

■ The Court must review the agency's proceedings under the standards set forth in 5 U.S.C. § 706, which provides that the court shall:

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; ... [or]

(D) without observance of procedures required by law; [or]

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title ...

The court's review, therefore, is both substantive and procedural. Even if there is "substantial evidence" in the record for an agency finding, the court must set the finding aside if the agency failed to follow the "procedures required by law" in making its determination. *Atkinson Lines, Inc. v. United States*, 381 F.Supp. 39, 41–42 (S.D.Ohio 1974) ("[t]he substantial evidence standard

... does not exhaust the scope of review;" reviewing court has a "duty to scrutinize all aspects of the agency proceedings in order to decide whether it has acted fairly and within the proper legal framework"); *see also U.S. v. Dist. Council of N.Y.C. and Vicinity of the United Brotherhood of Carpenters*, 880 F.Supp. 1051, 1066 (S.D.N.Y.1995) ("an agency's decision can be 'arbitrary and capricious' if it was not the product of the requisite processes").

■ "The due process clause guarantees no person shall be deprived of life, liberty, or property without due process of law." *Guenther v. C.I.R.*, 889 F.2d 882, 884 (9th Cir. 1989). The essential ingredients of procedural due process necessarily include notice and an opportunity to be heard before an impartial and disinterested decision maker. The basic purpose of due process is to preserve "both the appearance and reality of fairness" in all adjudicative proceedings, " 'generating the feeling, so important to a popular government, that justice has been done.' " *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980) (quoting *Joint Anti–Fascist Committee v. McGrath*, 341 U.S. 123, 172, 71 S.Ct. 624, 649, 95 L.Ed. 817 (1951)).

■ The Samish contend that the ex parte meeting between attorney Keep and Assistant Secretary Deer violated the procedures required by the APA, the Fifth Amendment's Due Process Clause, and the Court's order incorporating the terms of the Joint Status Report. The Department conceded at the hearing before this Court on July 18, 1996, that the meeting was improper:

THE COURT: Explain to me the purpose of having the government's expert witness, Doctor Roth, meet personally with the decision maker ex parte, off the record, to convey, I assume, reasons why the testimony that apparently was rejected by the administrative law judge ought to be accepted by the decision maker? Now, doesn't that seem fundamentally unfair to you.

MR. ROGERS: I think it should have been done differently, Your Honor. Yes, it does. I don't know why he was called

there. I don't know what he said when he was there.

THE COURT: We'll never know, will we, because there's no record of that? ...

MR. ROGERS: No, there isn't....

(TR at 41).

The Ninth Circuit has stated that "ex parte proceedings are anathema in our system of justice." *United States v. Thompson,* 827 F.2d 1254, 1258–59 (9th Cir.1987). The ex parte meeting that occurred here between Assistant Secretary Deer, the decision maker, and Mr. Keep, the government advocate, represents the antithesis of due process and was fundamentally unfair to the Samish. As the Ninth Circuit previously stated in this very case, "Informal decision-making behind closed doors and with an undisclosed record is not an appropriate process for the determination of matters of such gravity." *Greene v. Babbitt,* 64 F.3d 1266, 1275 (9th Cir.1995). Despite the Ninth Circuit's admonishment, stated in clear and unambiguous terms, the government began anew, within two months after the Ninth Circuit's decision, to engage in informal decision-making behind closed doors, without a record.[10] The Court concludes that the government's ex parte contacts with the decision maker rendered the proceedings fundamentally unfair and violated the Samish Tribe's Fifth Amendment due process rights.

■ The ex parte meeting was also an express violation of the Administrative Procedure Act. Section 554(d)(2) of Title 5 provides in part:

An Employee or Agent engaged in the performance of investigative or prosecuting functions for an Agency in a case may not, in that or a factually related case, participate or advise in the decision, recommended decision, or agency review pursuant to Section 557 of this Title, except as witness or counsel in public proceedings.

At oral argument on July 18, 1996, the government expressly conceded that the ex parte meeting between Keep and Deer violated 5 U.S.C. § 554(d)(2). TR at 41. ("...

it was violated, yes, there's no question, Your Honor.").

The government attorney, Scott Keep, was the Department of Interior's representative and counsel, and he argued and defended the Department's position in the proceedings before the Administrative Law Judge. As an advocate, he was prohibited from participating in, advising, or assisting the Assistant Secretary with her final decision as to tribal recognition for the Samish. Nevertheless, Mr. Keep, obviously unfazed by statements of disapproval from this Court and the Ninth Circuit, and with apparent disregard for both statutory and traditional standards of fair play, met directly with the ultimate decision maker and urged her to deny federal recognition to the Samish. Although unsuccessful in that attempt, he nevertheless succeeded in persuading the decision maker to reject several of the ALJ's proposed findings and instead substitute alternative findings more palatable to the Department. It is not sheer coincidence that the Final Determination signed by Assistant Secretary Ada Deer on November 8, 1995, is substantially the same as the draft decision prepared and submitted by Mr. Keep. Barsh Decl., docket no. 328, Ex. I. Accordingly, the Court concludes that the ex parte communication between Mr. Keep and Assistant Secretary Deer violated the Administrative Procedure Act.

3. *The Joint Status Report*

■ Plaintiffs also contend that the Government violated the Agreed Joint Status Report entered into by the parties in July 1992, and approved by the Court in September 1992. That report, docket no. 191, provided in part that written comments on the ALJ's findings and recommendations could be submitted to the Assistant Secretary within 30 days and that "within 60 days of receiving the findings and recommendation of the Administrative Law Judge, the Assistant Secretary shall either adopt or reject them, and issue a new decision as to the status of plaintiffs...." The Joint Status Report also provided that the decision of the Assistant

10. Scott Keep was the lawyer who argued the case before this Court in 1992, and therefore it is inconceivable that he did not read the Ninth

Circuit decision sometime *before* the November 8, 1995 ex parte meeting with the Assistant Secretary.

Secretary would constitute final agency action of the Department of Interior, unless the Secretary of the Interior determined within 30 days that the decision should be reconsidered in accordance with 25 C.F.R. Part 83.

The plaintiffs contend that the Secretary of the Interior had only 30 days from the date of the Assistant Secretary's final decision to accept or reject the Assistant Secretary's decision. Because the Secretary's decision was issued more than 30 days after November 8, 1995, the date of the Assistant Secretary's decision, the plaintiffs argue the Secretary's decision was contrary to the agreement of the parties and therefore void. The Court rejects this argument. The failure of the Secretary to act within 30 days of the Assistant Secretary's decision does not render the decision void. Although a technical violation of the Joint Status Report, the Court concludes that this violation alone provides an insufficient basis for vacating the agency's decision.

■ The Court also rejects the plaintiffs' argument that the Joint Status Report limited the role of the Assistant Secretary to accepting or rejecting the ALJ's findings. The language of the Joint Status Report does not prohibit the Assistant Secretary from modifying the recommendations of the Administrative Law Judge, and the Court refuses to vacate the modified findings on those grounds alone.

The Court does find, however, that the Joint Status Report established the basic procedures which the parties were obligated to follow upon remand. The ex parte communications between attorney Scott Keep and the decision maker clearly were outside the procedures set forth in the Joint Status Report approved by this Court, and therefore violated the terms of the Court's order.

### 4. The Remedy

The Government acknowledges the impropriety of the previous proceedings on remand, but argues that the Court should once again remand this case to the Bureau of Indian Affairs for further proceedings. The Samish object to any further delays and contend that, at best, remand would result in reinstatement of the findings and, at worst, "it will lead to another appeal, in a dispute that has already sapped plaintiffs of 20 years of their lives." Plaintiffs' Response to Questions Posed by the Court (docket no. 312) at 10.

The purpose of this Court's original remand order in 1992 was to take this case out of the political arena and to assure that the Samish would have their claims heard by an impartial and disinterested fact finder. The procedures outlined in the Joint Status Report, and adopted by the Court, reflect this intent. This purpose was substantially frustrated, however, by the government lawyer's improper ex parte communications with the decision maker, which resulted in a violation of the plaintiffs' rights to due process.

■ In most cases where a litigant successfully challenges an agency's action, the appropriate remedy is to remand the proceeding for agency action not inconsistent with the decision of the reviewing court. III Davis & Pierce, *Administrative Law Treatise* § 18.1 (1994). There are, however, limitations to this rule. When "administrative misuse of procedure has delayed relief," the court is not limited to "mere remand." *Benten v. Kessler,* 799 F.Supp. 281, 291 (E.D.N.Y.1992). The court has the "equitable power to order relief tailored to the situation." *Id.; Sierra Pacific Indus. v. Lyng,* 866 F.2d 1099, 1111 (9th Cir.1989) (court reviewing agency action may " 'adjust its relief to the exigencies of the case.' ") (quoting *Ford Motor Co. v. NLRB,* 305 U.S. 364, 373, 59 S.Ct. 301, 307, 83 L.Ed. 221 (1939)).

Other courts have granted relief without remand in the social security context when the agency has caused substantial delay. *See Stone v. Heckler,* 761 F.2d 530, 533 (9th Cir.1985) (ordering benefits rather than remanding when ALJ's finding of "not disabled" was not supported by substantial evidence, the record was fully developed, and further proceedings would "only prolong an already lengthy process"); *Kelly v. Railroad Retirement Bd.,* 625 F.2d 486, 496 (3rd Cir. 1980) (refusing to remand for further proceedings when delay was already unreasonable); *Carr v. Sullivan,* 772 F.Supp. 522, 531 (E.D.Wash.1991).

The import of these cases is that when agency delays or violations of procedural requirements are so extreme that the court has no confidence in the agency's ability to decide the matter expeditiously and fairly, it is not obligated to remand. Rather than subjecting the party challenging the agency action to further abuse, it may put an end to the matter by using its equitable powers to fashion an appropriate remedy.

■ This case presents unusual circumstances that make a remand inappropriate. The proceedings before the Bureau of Indian Affairs have been marred by both lengthy delays [11] and a pattern of serious procedural due process violations. The decision to recognize the Samish took over twenty-five years, and the Department has twice disregarded the procedures mandated by the APA, the Constitution, and this Court. Mr. Keep and his superiors [12] must have recognized the fundamental unfairness involved with having Department officials argue ex parte to the agency decision maker the contentions that had already been considered and rejected by the Administrative Law Judge. The Court concludes that a remand to the agency will cause further delay and expense while subjecting the Samish to a substantial risk of suffering the same procedural violations that they have now endured twice over the past ten years.

### 5. Reinstatement of Contested Findings by the Court

The Samish seek to have the Court reinstate three particular findings of the ALJ

11. The Samish contend that the Assistant Secretary's failure to render her final agency decision within 30 days as required by the parties Court-approved stipulation, caused the tribe to miss fiscal year 1996 application deadlines for funding. Remand would further delay the Samish's ability to obtain benefits which were reduced or eliminated while they fought for federal recognition.

12. The senior legal officer of the Bureau of Indian Affairs, Associate Solicitor Robert Anderson, was also aware of Mr. Keep's involvement in the ex parte meeting with the Assistant Secretary. See Barsh Decl., docket no. 328, Ex. J.

13. The three proposed findings that were rejected by the Assistant Secretary were as follows:

that were rejected by the Assistant Secretary.[13] They argue that these proposed findings were necessary to the tribal recognition process. Plaintiffs contend that the first finding justifies including in the plaintiffs' tribe members of several families which are of Noowhaha, rather than Samish decent; the second finding establishes a necessary basis for the plaintiffs to continue to assert interests, as a tribe, in the traditional territory of the Samish; and the third finding goes to the potential liability of defendants, as a matter of the Federal–Indian Trust relationship, for wrongfully denying plaintiffs benefits and generating twenty years of administrative proceedings and litigation. Plaintiffs' Responses (docket no. 312) at 5–6.

Rather than remand to the Department, the Court reinstates the contested findings. Failure to do so would subject the Samish to relitigation of issues already decided in their favor by the Administrative Law Judge and improperly rejected by Assistant Secretary Deer. That would be an unacceptable outcome under all the circumstances of this case. Administrative Law Judge Torbett conducted a thorough and proper hearing on the question of the Samish's tribal status, and made exhaustive proposed findings of fact after considering all the evidence and the credibility of the witnesses. Ada Deer, the decision maker, arbitrarily and in violation of clearly established law rejected those proposed findings and inserted new findings drafted by Mr. Keep. Under these limited circumstances, where the agency has re-

(A) a substantial part of the Noowhaha tribe merged historically with the Samish, such that the present-day Samish Tribe may have interests in traditional Noowhaha territory which derive through these Noowhaha family lines (see Final Determination at 12–13, 32);
(B) the Samish family lines that settled on the Swinomish Indian Reservation did not relinquish their Samish affiliation, so there was no historical merger of the Samish with the Swinomish (see Final Determination at 35); and
(C) the omission of the Samish from a list of tribes prepared by the Defendants in the 1960s was neither based on actual research, nor was it intended to be used as the basis for determining which Indian groups are to be recognized by the United States (see Final Determination at 16, 38–39).

peatedly demonstrated a complete lack of regard for the substantive and procedural rights of the petitioning party, and the agency's decision maker has failed to maintain her role as an impartial and disinterested adjudicator, it is appropriate for this Court to "use its equitable power to order relief tailored to the situation." *Benten,* 799 F.Supp. at 291; *see also Sierra Pacific Indus.,* 866 F.2d at 1111. In this case, the government should be bound by the findings of the Administrative Law Judge, which were prepared after all parties had an opportunity to be heard. The ALJ carefully considered and weighed all the evidence, including the testimony of the parties' witnesses, and made findings consistent with the evidence. Assistant Secretary Deer's ultimate rejection of the findings was based solely on improper ex parte contacts with one of the parties' lawyers. Under these circumstances, reinstatement of the rejected findings is the appropriate remedy.

▮ Finally, the Court finds that Mr. Scott Keep's conduct in connection with the ex parte meeting with the Assistant Secretary was particularly egregious and in violation of the Court's order incorporating the terms of the Joint Status Report.[14] Accordingly, the Court finds his conduct in contempt of court and ORDERS Mr. Keep to refrain in the future from taking any action in connection with this case or participating in any further proceedings involving the Samish Tribe.

### CONCLUSION

The ex parte communications between the decision maker, Assistant Secretary Ada Deer, and the Department's lawyer, Scott Keep, violated the Administrative Procedure Act, the Samish Tribe's due process rights under the Fifth Amendment, and this Court's Order incorporating the terms of the Joint

Status Report. Because the Bureau of Indian Affairs has repeatedly and consistently disregarded the rights of the Samish and caused extraordinary delay in the processing of the Samish's claims, the Court finds that it should grant relief without remand to the agency. The appropriate remedy under the unique circumstances of this case is to reinstate the three contested findings of the Administrative Law Judge that were arbitrarily rejected by the decision maker after her ex parte meeting with the government's lawyer.

IT IS SO ORDERED.

---

**14.** Mr. Keep has participated to some degree in discussions concerning the legal status of the Samish since mid–1974, and Mr. Keep's Branch (formerly the Branch of Tribal Government and Alaska) was involved in opposing the Samish tribe's efforts to seek a writ of certiorari to the Ninth Circuit in *United States v. Washington. See* Defendants' Opposition Brief (docket 288), Ex. 4 (interrogatory answers by Mr. Keep). He had direct involvement in the case of *United States v. Washington* as early as 1972. *See* Exhibits to Keep deposition, Ex. 1 to Plaintiffs' Reply (docket no. 293). Mr. Keep was directly involved in the ex parte contacts in the late 1980s that ultimately led this Court to remand for further proceedings under the Administrative Procedure Act.