**SAMISH INDIAN NATION, a federally recognized Indian Tribe, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 02–1383 L.**

United States Court of Federal Claims.

Sept. 30, 2003.

Craig Jones Dorsay, Portland, OR, counsel of record for plaintiff, with whom were William R. Perry and Anne D. Noto, Washington, DC.

Jo–Ann Marie Shyloski, Environmental & Natural Resources Division, United States Department of Justice, Washington, DC, counsel of record for defendant, with whom were Thomas L. Sansonetti, Assistant Attorney General, and Jason Roberts, United States Department of the Interior.

**OPINION**

DAMICH, Chief Judge.

## I. Introduction

Before the Court is Defendant's Motion to Dismiss (hereinafter "Def.'s Mot."). Defendant seeks dismissal of five claims asserted by the Samish Indian Nation (Plaintiff). Claims one and two allege that Defendant should have treated Plaintiff as a federally recognized tribe during the period of 1969 to 1996. Claims three and four allege that Defendant violated the promises made to Plaintiff in the Treaty of Point Elliott during the period of 1969 to 1996. Claim five alleges that Defendant violated a variety of laws after Plaintiff was federally recognized as a tribe in 1996. Because claims one, two, three, and four are barred by the statute of limitations, they are dismissed. Further, even if the statute of limitations did not apply to bar Plaintiff's claims, claim one is dismissed because of lack of jurisdiction under the Indian Self–Determination Act (ISDA), and claims three and four are barred due to collateral estoppel. Claim five is also dismissed, as the Court lacks jurisdiction under 28 U.S.C. § 1500, because Plaintiff has an identical, previously filed claim pending in district court in the Western District of Washington.

For the reasons set forth herein, Defendant's Motion to Dismiss is GRANTED.

## II. Background

Prior to 1969, Plaintiff allegedly received federal services and benefits available to In-

dian tribes[1] and was included in a 1966 unofficial list of tribes recognized by Defendant. This list was superseded by a 1969 unofficial list. Plaintiff did not appear on that list due to an arbitrary omission made by Defendant.[2] By the early 1970s, Plaintiff was not receiving any federal aid as a tribe, and, in 1972, Plaintiff began petitioning Defendant for federal recognition. In 1978, the promulgation of 25 C.F.R. § 83.2 established that only officially recognized Indian tribes would be eligible for federal services and benefits. In 1987, the Samish's 1972 petition for recognition was denied.

Plaintiff filed suit in the United States District Court for the Western District of Washington in 1989, challenging the 1987 decision. The district court found that the 1987 decision had violated Plaintiff's Due Process rights under the Fifth Amendment to the United States Constitution; this was affirmed on appeal. Upon remand, an Administrative Law Judge (ALJ) found that the Samish had continued to exist from the time of the 1855 Treaty of Point Elliot until the present. Based on the ALJ's findings, the Assistant Secretary of Indian Affairs ruled in favor of the Samish, but omitted certain findings of fact made by the ALJ. After this, the Samish appealed to the district court in the

Western District of Washington, which entered summary judgment for the Samish. This resulted in the Plaintiff obtaining federal recognition as a tribe in 1996.

Plaintiff contends that it was improperly omitted from the 1969 unofficial tribe list and, therefore, that it should have continued to be treated as a federally recognized tribe even before its 1996 recognition.

### III. Analysis

The Plaintiff variably refers to itself as being not federally recognized during the period of 1969 to 1996,[3] and being federally recognized but not treated as such during the same period.[4] This Court, taking into account Plaintiff's statements made in the pleadings and at oral argument, approaches this case from the standpoint that Plaintiff is claiming that it has always been a federally recognized tribe, but that it has not been treated as such. Based on this observation, the Court refrains from addressing certain arguments, such as whether the political question doctrine applies to bar this Court's consideration of certain claims.[5]

A. Claim One—Violation of the Indian Self–Determination Act (ISDA), 25 U.S.C. § 450 *et seq.*

Plaintiff alleges that Defendant refused to treat it as a federally recognized tribe, which

1. Plaintiff claims that it had been receiving federal aid up until the early 1970s. Pl.'s Brief in Opp'n to the United States' Mot. to Dismiss at 4 (hereinafter "Pl.'s Opp'n"). However, the court in *Greene v. Lujan* states, "The evidence submitted by plaintiff[ ] does not conclusively show that the Samish received benefits because of their tribal status." No. C89–645Z, 1992 WL 533059 at *3 (W.D.Wash. Feb.25, 1992) (denying motion for summary judgment). Further, Plaintiff does not even allege that it was receiving funds prior to 1969 *as a tribe*, stating in its opposition brief only that prior to the 1970s, "Samish *Indians* received health and other benefits provided by the United States to *members* of Indian tribes." Pl.'s Opp'n at 4 (emphasis added).

2. The Western District of Washington district court, reinstating the finding of an Administrative Law Judge, concluded that the omission of the Samish from the unofficial 1969 list was arbitrary. *Greene v. Babbitt*, 943 F.Supp. 1278, 1288 n. 13 (W.D.Wash.1996).

3. Am. Compl. at 16 (stating that the United States "wrongfully refused to recognize the Sam-

ish Tribe"); *Samish Indian Nation v. United States*, Aug. 5, 2003 Tr. at 33 (hereinafter "2003 Tr.") (Plaintiff's statement that "it is not until the [1996] judgment was issued that Samish was fully recognized on the basis of continual tribal existence . . . .").

4. Am. Compl. at 1 ("the government unlawfully and arbitrarily refused to treat the Tribe as a recognized tribe."); Am. Compl. at 12 (referring to the omission from the 1969 list that caused "treatment of the Nation as not federally recognized"); Am. Compl. at 18 (stating the alleged consequences of the United States "refusing to treat the Samish Indian Nation as a federally recognized tribe"); 2003 Tr. at 7 (Plaintiff's statement that "the Tribe has always been recognized . . . . Our position is that [recognition] continued."); *Id.* at 29 (Plaintiff's statement that "[the Samish] were recognized this whole time"); Pl.'s Opp'n at 7 (referring to the "failure of the Department of the Interior to treat the Samish Tribe as a federally recognized tribe").

5. This argument was raised by Defendant in its motion to dismiss. Def.'s Mot. at 22–29.

prevented Plaintiff from entering into contracts and receiving funding under ISDA from 1969 until 1996. Am. Compl. at 1, 18. Plaintiff claims that it should have been treated as a tribe during that period, because the lack of recognition was due to Defendant's 1969 clerical error. *Id.* at 11. Since ISDA was not promulgated until 1975, this claim can only involve damages for the period of 1975 through 1996.[6]

Claim One should be dismissed because (1) the statute of limitations period has expired for that claim, and (2) the Court has no jurisdiction under the ISDA.

### 1. Statute of Limitations

The Court of Federal Claims has jurisdiction over lawsuits filed within six years of their accrual. 28 U.S.C. § 2501 (2003). Although six years have passed from the time Plaintiff was aware of its lack of recognition as a tribe until the present action, Plaintiff argues that the statute was tolled by both the exhaustion of administrative remedies doctrine[7] and the equitable tolling doctrine.[8] Plaintiff cannot toll the statute of limitation with either exception, however, because it could have pursued the present claim independently of the resolution of administrative proceedings, and because Defendant did not deceive Plaintiff into missing the deadline for filing within the statute of limitations.

### a) Exhaustion of Administrative Remedies Doctrine

■ Pursuant to the exhaustion of administrative remedies doctrine, a claim against the government does not accrue until all of the administrative proceedings regarding the claim are final. *Crown Coat Front Co. v. United States,* 386 U.S. 503, 509–10, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967); *Brighton Vill. v. United States,* 52 F.3d 1056, 1060 (Fed.Cir. 1995). The administrative remedies sought, however, must be mandatory, rather than

permissive, in order to toll the statute of limitations. *Brighton,* 52 F.3d at 1060.

■ In the present case, Plaintiff had means other than the administrative process to gain federal recognition as a tribe. Plaintiff could have pursued the present action in court before the administrative proceedings were concluded. Further, eligibility under the ISDA is prospective and does not confer any retroactive benefits: "Acknowledgment of tribal existence by the Department [of the Interior] *is a prerequisite* to the protection, services, and benefits of the Federal government available to Indian tribes by virtue of their status as tribes." 25 C.F.R. § 83.2 (emphasis added). Therefore, the resolution of administrative proceedings would not have addressed Plaintiff's present claims, and it could have pursued those claims independently.

Plaintiff argues that its claims did not accrue until final judgment was entered in *Greene v. Babbitt,* in which plaintiffs Greene and the Samish Indian Tribe pursued an action challenging the Department of the Interior's tribal acknowledgment process. 943 F.Supp. 1278, 1280 (W.D.Wash.1996). The court in *Greene* reinstated three findings of an Administrative Law Judge that had been rejected by the Assistant Secretary of Indian Affairs during the recognition proceedings. *Id.* at 1288. One of the reinstated findings was that the omission of Plaintiff from the 1969 list was arbitrary. *Id.* at 1288 n. 13. This holding, however, does not lead to the conclusion that Plaintiff was entitled to benefits for the period of 1969 to 1996. The reinstated finding only "[went] to the *potential* liability of defendants … for wrongfully denying plaintiffs benefits and generating twenty years of administrative proceedings and litigation." *Id.* at 1288 (emphasis added). Thus, Plaintiff could have brought the present action before the resolution of the administrative proceedings.

---

**6.** If Plaintiff did actually receive funds prior to 1969 (*see supra* note 1), Plaintiff might have a claim for continuation of those funds based on the law (other than the ISDA) under which they received funding. However, as Plaintiff has not mentioned any such basis, and since nothing in the ISDA provides that the ISDA has retroactive effect, this Court declines to examine the issue

here. Furthermore, the Court notes, without determination of the issue, that Plaintiff might face the same statute of limitations problem that has necessitated the dismissal of claim one herein.

**7.** Pl.'s Opp'n at 17–23.

**8.** *Id.* at 23–27.

Because the administrative proceedings were only a permissive procedure, they do not toll the statute of limitations.

### b) Equitable Tolling Doctrine

 In addition to claiming that the exhaustion of administrative remedies doctrine tolled the statute of limitations, Plaintiff also claims that the equitable tolling doctrine tolled the statute.[9] However, this claim is without merit. Under the equitable tolling doctrine, the statute of limitations is tolled if the party asserting the exception is delayed or misled by the opposing party into missing the statute of limitations for filing a claim. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Application of the doctrine is allowed only under exceptional circumstances and only if the party asserting it has actively pursued its claim. *Irwin*, 498 U.S. at 96, 111 S.Ct. 453 (1990); *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). As the Supreme Court has stated:

> We have allowed equitable tolling in situations where . . . the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

*Irwin*, 498 U.S. at 96, 111 S.Ct. 453 (citations omitted).

 Plaintiff here became aware that it was not being treated as a recognized tribe by Defendant in 1969, but failed to pursue recognition until 1972. Plaintiff did not institute the present action until 2002, and could have pursued it without waiting 33 years, as discussed in Part II.A.1.a., *supra*. These time gaps show a lack of diligence in pursuing the claim on Plaintiff's part, and, as the Supreme Court has said, courts are "much

less forgiving" if the Plaintiff does not "exercise due diligence in preserving his legal rights." *Irwin*, 498 U.S. at 96, 111 S.Ct. 453.

Although Defendant's omission of the Samish from a list of Indian tribes was arbitrary, Defendant did not mislead Plaintiff into missing the statute of limitations for filing the present action. The district court in which the Samish challenged the administrative recognition process found that Plaintiff's "long journey for recognition has been made more difficult by excessive delays and governmental misconduct." *Greene*, 943 F.Supp. at 1281. However, despite Plaintiff's argument to the contrary, this misconduct only affected the administrative process, while the present claim could have been pursued independently. Plaintiff presents no evidence that Defendant deceived Plaintiff into missing the filing period. In fact, at oral argument, Plaintiff admitted that Defendant did not engage in any acts of deceit.[10]

Because Plaintiff could have pursued the present claim more diligently and because Defendant's errors during the administrative process were not misleading with respect to the present action, the statute of limitations is not tolled under the equitable tolling doctrine.

Therefore, since neither the exhaustion of administrative remedies doctrine nor the equitable tolling doctrine apply to this case, claim one is dismissed due to Plaintiff's failure to file within the statute of limitations.

### 2. Jurisdiction under ISDA

 As stated above, Claim one is dismissed as a result of Plaintiff's failure to file its complaint within the statute of limitations. However, for purposes of completeness, the Court also notes that it does not have jurisdiction over claim one because Plaintiff and Defendant never entered into a contract under ISDA.

---

9. *See id.*

10. The transcript states the following:

> THE COURT: [I]t seems that the government would have to have mislead [sic] or tricked the [Plaintiff] into missing the statute of limitations, in order for there to be equitable tolling

> in this case. I don't see any evidence of that, Mr. Dorsay, do you?
>
> MR. DORSAY [counsel for Plaintiff]: There wasn't any tricking or active deceit . . . there was no active deceit or concealment. I would have to agree with that.
>
> 2003 Tr. at 39.

According to the Supreme Court, "[i]t is axiomatic that the United States may not be sued without its consent." *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). The Court further states that, "by giving the Court of Claims jurisdiction over specified types of claims against the United States, the Tucker Act constitutes a waiver of sovereign immunity with respect to those claims." *Id.* (citations omitted). The claims which constitute a waiver of federal immunity from lawsuits include contract claims and money-mandating statutes or regulations. *Id.* at 215–17, 103 S.Ct. 2961.

Although Plaintiff brings this claim under a specific statute, ISDA (25 U.S.C. § 450f) the statute's "waiver of federal sovereign immunity is limited to 'self-determination contracts' entered into by Indian tribes or tribal organizations and the government." *Demontiney v. United States ex rel. Dep't of Interior,* 255 F.3d 801, 805 (9th Cir.2001); *accord Babbitt v. Oglala Sioux Tribal Pub. Safety Dep't,* 194 F.3d 1374, 1376 (Fed.Cir.1999) (construing ISDA as governing "self-determination contract[s]" under which the Bureau of Indian Affairs must fund programs and indirect costs to contractors); *Carlow v. United States,* 40 Fed.Cl. 773, 775 (1998). Plaintiff is not claiming a breach of an ISDA contract; in fact, it is alleging instead that Defendant refused to enter into such a contract.[11]

When the Secretary of the Interior refuses to enter into a self-determination contract, he or she must "provide the tribal organization with a hearing on the record ... except that the tribe or tribal organization may ... exercise the option to initiate an action in a Federal district court and proceed directly to such court pursuant to section 450m–1(a) of this title." 25 U.S.C. § 450f(b)(3). Therefore, the district courts, rather than this Court, have jurisdiction to compel the Secretary to enter into self-determination contracts.

Because this Court only has jurisdiction under ISDA for claims alleging violation of self-determination contracts, and because Plaintiff's claim does not allege the existence of any such contract, this claim must be dismissed.

B. Claim Two—Violation of the Snyder Act, 25 U.S.C. §§ 2, 13 and Other Statutes for the Benefit of Tribes and Indians

Plaintiff alleges that Defendant's refusal to treat it as a recognized tribe prevented it from obtaining services and benefits under the Snyder Act and more than 30 other statutes during the period of 1969 to 1996. Am. Compl. at 19.

This claim is without merit as the statute of limitations precludes it. 28 U.S.C. § 2501. Plaintiff cannot assert either the exhaustion of administrative remedies doctrine or the equitable tolling doctrine for the reasons set forth in the discussion of claim one, *supra* : (1) Plaintiff could have pursued this action while the administrative proceedings regarding its federal recognition were under way, and (2) Defendant did not deceive Plaintiff into missing the time period of the statute of limitations for the present action.[12]

---

11. Outside of violations of self-determination contracts, ISDA has not been found by any court to be money-mandating. Plaintiff is unpersuasive in its argument that ISDA is analogous to statutes that provide comprehensive federal control over assets for the benefit of Indians and are considered money-mandating. *See Mitchell,* 463 U.S. at 224, 103 S.Ct. 2961 (stating that these other statutes "clearly give the Federal Government full responsibility to manage Indian resources"). Under ISDA, the Government does not have comprehensive control over Indian resources because "[t]he ISDA's stated purpose is to allow Native American tribes to operate their own federal programs directly." *Babbitt,* 194 F.3d at 1376.

12. The part of the claim requesting damages under the Snyder Act can also be dismissed on the ground that the Court does not have jurisdiction over it. Under *Mitchell,* the Court has jurisdiction over money-mandating claims that arise out of statutes or regulations. *Mitchell,* 463 U.S. at 218, 103 S.Ct. 2961. The Snyder Act, however, does not support money-mandating claims. *White Mountain Apache Tribe v. United States,* 249 F.3d 1364, 1372 (Fed.Cir.2001). Moreover, the Supreme Court has held that the general language of the Snyder Act "do[es] not translate through the medium of legislative history into legally binding obligations." *Lincoln v. Vigil,* 508 U.S. 182, 194, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993).

C. Claim Three—Breach of Treaty Rights of Recognition, Self–Government and Protection

■ Plaintiff alleges that it was a party to the 1855 Treaty of Point Elliott (hereinafter "Treaty"), which imposed legal duties on Defendant for its benefit. Am. Compl. at 20. Plaintiff claims that Defendant breached its Treaty obligations by refusing to provide Plaintiff with funds that were available to other Treaty-recognized tribes between 1969 and 1996. *Id.* at 21. Although Plaintiff is correct that a tribe known as the Samish were a party to the Treaty of Point Elliot, the current Samish Tribe is not descended from that tribe; therefore, the Samish have no rights under the Treaty. *See United States v. Washington,* 476 F.Supp. 1101, 1106 (W.D.Wash.1979).

Due to the application of the statute of limitations and collateral estoppel, the Court is precluded from hearing this claim.

1. Statute of Limitations

The Court cannot proceed with claim three because Plaintiff is barred by the six-year statute of limitations. 28 U.S.C. § 2501. Plaintiff was aware of Defendant's denial of benefits as early as 1969 but failed to bring any legal action prior to the present case, which was filed in 2002. Although Plaintiff's rights under the Treaty are distinct from the rights under federal recognition as a tribe, Plaintiff cannot toll the statute under either the exhaustion of administrative remedies doctrine or the equitable tolling doctrine.

The exhaustion of administrative remedies doctrine does not apply here because Plaintiff could have brought this claim when it became aware of the Treaty violations. The administrative proceedings regarding Plaintiff's recognition as a tribe had no impact on its recognition as a party to the Treaty.[13] In adjudicating Plaintiff's claims of misconduct during the Department of the Interior's tribal recognition process, the Ninth Circuit regarded "the issues of tribal treaty status and federal acknowledgment as fundamentally different." *Greene v. Babbitt,* 64 F.3d 1266, 1270 (9th Cir.1995). Based on the logic of the Ninth Circuit, which this Court finds persuasive, it seems certain that Plaintiff could have pursued its claim independently, without waiting for the resolution of federal recognition proceedings.

The equitable tolling doctrine also does not apply to this claim because Plaintiff fails to demonstrate that it was deceived or misled by Defendant into missing a filing deadline set by the statute of limitations.[14] Plaintiff's arbitrary omission from the 1969 list and the administrative delays thereafter affected only the administrative recognition proceedings, not the Treaty rights.[15]

Because the statute of limitations precludes Plaintiff from bringing claim three, the Court cannot proceed on its merits.

2. Collateral Estoppel

■ In addition to being barred by the statute of limitations, claim three fails under the doctrine of collateral estoppel. Plaintiff claims that Defendant breached the promises made in the 1855 Treaty of Point Elliott. Am. Compl. at 21. Plaintiff, however, already litigated and lost the issue of its participation in the Treaty. *See United States v. Washington,* 476 F.Supp. 1101, 1106 (W.D.Wash.1979). Collateral estoppel bars re-litigation of an issue if: (1) the issue previously adjudicated is identical to the present one; (2) the issue was "actually litigated" in the previous case; (3) previous determination of the issue was necessary to the final decision; and (4) the party precluded was fully

---

**13.** The text of official acknowledgment states that "the Samish Tribal Organization has been continuously identified throughout history as Indian or aboriginal, has existed as a distinct community since first sustained European contact, has maintained political influence within itself as an autonomous entity and that 80 percent of its members are descendants of the historical Samish tribe or families which became incorporated into that tribe." Final Determination for Federal Acknowledgment of the Samish Tribal Organiza-

tion as an Indian Tribe, 61 Fed.Reg. 15,825, 15,826 (Bureau of Indian Affairs, Dep't of the Interior April 9, 1996). The acknowledgment, however, has no effect on Plaintiff's Treaty rights.

**14.** *See supra* note 10.

**15.** *See* Part II.A.1.b., *supra.*

represented. *McCandless v. Merit Sys. Prot. Bd.,* 996 F.2d 1193, 1198 (Fed.Cir. 1993).[16]

█ With regard to claim three, the four elements of collateral estoppel have been satisfied. First, the identical issue regarding Plaintiff's tribal status in the Treaty has already been decided by the United States District Court for the Western District of Washington, which held that the "Samish Tribe is not an entity that is descended from any of the tribal entities that were signatory to the Treaty of Point Elliott." 476 F.Supp. at 1106. The district court later stated that Plaintiff was barred under res judicata from re-litigating its status as successor to the original Samish Indian Tribe and that Plaintiff was not a party to the Treaty of Point Elliott. *Greene v. Lujan,* No. C89–645Z, 1992 WL 533059 at *2 (W.D.Wash. Feb.25, 1992) ("The issue of whether [the Samish] are successors in interest to the Treaty of Point Elliot has already been resolved."). In reviewing this matter, the Ninth Circuit "affirmed denial of treaty rights on the independent factual finding of insufficient continuous political and cultural cohesion." *Greene v. Babbitt,* 64 F.3d 1266, 1270 (9th Cir.1995) (citing its decision in *United States v. Washington,* 641 F.2d 1368, 1372–74 (9th Cir. 1981)).[17]

Plaintiff, however, claims that its "status as a party to the Treaty of Point Elliot was conclusively established." Pl.'s Opp'n at 3. Plaintiff cites decisions in *Duwamish v. United States,* 79 Ct.Cl. 530, 533, 1934 WL 2033 (1934), and *Samish Tribe,* 6 Ind. Cl. Comm. 159, 170 (1958). However, as the court in *Greene v. Lujan* states,

[T]he issue of treaty status was finally resolved in *United States v. Washington.*

The Court in *United States v. Washington* held that these prior claims involved compensation for individuals, not tribal rights, and therefore the doctrines of *res judicata* and collateral estoppel were inapplicable. The Court then determined that petitioners were not successors in interest of the treaty signatories. This holding is binding in this case and treaty issues cannot be relitigated.

1992 WL 533059 at *3 (citations omitted).

Second, Plaintiff actually litigated the issue, as it was one of the five intervener tribes in the action and had much at stake in the resolution of the claim. Plaintiff presented evidence evaluated by the court regarding its organizational structure, constitution, and previous litigation in related matters. 476 F.Supp. at 1106.

Third, the denial of Treaty status was necessary to the final decision that the Samish did not have the fishing rights in contention. *Id.* at 1111. Fishing rights were a benefit conferred under the Treaty. Therefore, denial of Treaty status had a direct effect on those rights. *Id.*

Finally, the Samish and the other four intervener tribes were jointly represented by three attorneys in the *Washington* case. *Id.* at 1102. There is no indication that the representation was inadequate.

Because another court has already determined that the current Samish Indian Nation was not a party to the Treaty of Point Elliott, Plaintiff is barred from litigating the present claim.

**D. Claim Four—Temporary Taking Based on Treaty Rights**

As an alternative to claim three, Plaintiff alleges that Defendant's refusal to recognize

---

**16.** The doctrine of res judicata likely does not apply, as the present lawsuit involves different parties than the previously decided cases. Res judicata bars re-litigation of a claim if "(1) there is identity of parties (or their privies); (2) there has been an earlier final judgment on the merits of a claim; and (3) the second claim is based on the same set of transactional facts as the first." *Int'l Air Response v. United States,* 302 F.3d 1363, 1368 (Fed.Cir.2002).

**17.** Plaintiff's argument on this issue is misleading. Plaintiff quotes from the Western District of Washington district court case, citing the case as saying that members of the Samish Tribe were "descendants of Samish Indians who were party to treaty of Point Elliott [sic]." (Pl.'s Opp'n at 33.) The actual words of the case state, "The Intervenor [sic] Samish Indian Tribe ... is composed primarily of persons who are descendants in some degree of Indians who in 1855 were known as Samish Indians and who were party to the Treaty of Point Elliott." *United States v. Washington,* 476 F.Supp. at 1105–06.

it as a tribe was a temporary taking of the rights promised to it in the Treaty of Point Elliott. Am. Compl. at 22–23. Claim four is dismissed for the same reasons as claim three, namely because the statute of limitations has passed and because Plaintiff was not a party to the Treaty of Point Elliott.[18]

### E. Claim Five—Continuing Violation of Tribe's Rights

 Plaintiff alleges that, subsequent to its official recognition as a tribe in 1996, Defendant has continued to violate its rights by denying it federal benefits and services under 38 different statutes. Am. Compl. at 23. As a result, Plaintiff requests damages for the period of 1996 to the present.

This claim must be dismissed due to lack of jurisdiction under 28 U.S.C. § 1500. Plaintiff has a prior claim pending in district court in the Western District of Washington,[19] which is based on the same facts as the present claim—Defendant's alleged continuing denial of services and benefits to Plaintiff, despite Plaintiff's official recognition as a tribe in 1996. Therefore, according to § 1500: "The United States Court of Federal Claims shall not have jurisdiction of *any claim* for or in respect to which the plaintiff or his assignee has *pending* in any other court any suit or process against the United States . . . ." 28 U.S.C. § 1500 (emphasis added). As the Federal Circuit has explained, "The purpose of section 1500 is to prohibit the filing and prosecution of the same claims against the United States in two courts at the same time." *Johns–Manville Corp. v. United States*, 855 F.2d 1556, (Fed. Cir.1988) (citations omitted).

Accordingly, courts have determined that the words "any claim" denote a claim in this Court that is (1) based on the same operative facts as the claim filed in another court, and (2) seeks the same relief or relief that is to some extent overlapping. *Keene Corp. v. United States*, 508 U.S. 200, 212, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *Loveladies Harbor, Inc., v. United States*, 27 F.3d 1545, 1551 (Fed.Cir.1994). In this case, the operative facts are identical for both claims. Plaintiff is basing both claims on the failure of Defendant to treat it as a federally recognized tribe during the period of 1996 to the present. Plaintiff argues, however, that the relief sought in the two courts can be distinguished. Pl.'s Opp'n at 35. In the district court case, Plaintiff requests declaratory and injunctive relief, as well as monetary damages under the ISDA. The amended complaint in the action before this Court removes the claim for monetary relief based on the ISDA but retains the request for monetary damages based on other statutes. Am. Compl. at 23–24.[20] Binding precedent dictates that, as long as the operative facts are identical, when the relief sought is for monetary damages, the legal theory on which the claim is based is irrelevant. *Keene*, 508 U.S. at 212–213, 113 S.Ct. 2035 (upholding an interpretation of 28 U.S.C. § 1500 that, when the operative facts are the same, asking for relief under contract versus tort theories does not make claims distinct); *United States v. County of Cook*, 170 F.3d 1084, 1091 (Fed.Cir.1999) (construing monetary damages based on tax law and the Fifth Amendment Takings Clause as identical relief); *Dico, Inc. v. United States*, 48 F.3d 1199, 1203 (Fed.Cir.1995) (construing monetary damages for remediation costs versus damages based on the Fifth Amendment Takings Clause and the Due Process Clause to be identical relief).

Because Plaintiff asks for monetary damages in both courts, the relief is overlapping. Further, the district court claim was filed prior to the present action, and is therefore considered "pending" for purposes of the

---

18. *See* discussion of claim three, *supra*.

19. Plaintiff filed its complaint in district court on September 14, 2002, and filed its complaint in this Court on October 11, 2002.

20. Plaintiff's amendment does not actually affect the analysis of claims under 28 U.S.C. § 1500, because, under that statute "the jurisdiction of the Court [of Federal Claims] depends upon the state of things at the time of the action brought." *Keene*, 508 U.S. at 207, 113 S.Ct. 2035 (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539, 6 L.Ed. 154 (1824)).

statute.[21] Therefore, the Court does not have jurisdiction over the Plaintiff's fifth claim. However, although this claim must be dismissed, a dismissal under § 1500 is without prejudice and with "the unfettered right to return the claim to the docket of the court ... should the district court determine that it is without jurisdiction over that [previously filed] claim." *Conn. Dep't of Children & Youth Servs. v. U.S.*, 16 Cl.Ct. 102, 106 (1989).

## IV. Conclusion

Claims one, two, three, and four—alleging Defendant's failure to treat Plaintiff as a federally recognized tribe and violation of promises made to Plaintiff in the Treaty of Point Elliott during the period of 1969 to 1996—are barred by the statute of limitations; as such, they are dismissed for lack of subject matter jurisdiction. Even if the statute of limitations did not apply to bar Plaintiff's claims, claim one would be barred because of lack of jurisdiction under the ISDA, and claims three and four would be barred due to collateral estoppel. Claim five, which alleges that Defendant violated a variety of laws after Plaintiff was federally recognized as a tribe in 1996, is also dismissed, because the Court lacks jurisdiction under 28 U.S.C. § 1500, due to Plaintiff's identical, previously filed claim pending in district court in the Western District of Washington.

For the aforementioned reasons, Defendant's motion to dismiss is hereby GRANTED. The Clerk of Court is instructed to dismiss claims one, two, three, and four with prejudice and to dismiss claim five without prejudice.