**Slip Op. 23-129**

# UNITED STATES
# COURT OF INTERNATIONAL TRADE

**Court No. 21-00005**

AM/NS CALVERT LLC,

*Plaintiff,*

v.

UNITED STATES,

*Defendant.*

**Court No. 21-00015**

CALIFORNIA STEEL INDUSTRIES, INC.,

*Plaintiff,*

v.

UNITED STATES,

*Defendant.*

**Court No. 21-00027**

VALBRUNA SLATER STAINLESS, INC.,

*Plaintiff,*

v.

UNITED STATES,

*Defendant.*

Before: M. Miller Baker, Judge

**OPINION AND ORDER**

[In three APA suits challenging Commerce's denials of Section 232 duty exclusions, the court (1) denies

Defendant's motions to dismiss on mootness grounds as to finally liquidated entries; (2) treats Defendant's alternative motions to dismiss for failure to state a claim and for judgment on the pleadings as motions for partial summary judgment as to such entries, which the court denies; and (3) grants Defendant's motions for voluntary remand, subject to conditions.]

Dated: September 6, 2023

*Ann C. Motto*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC, for Defendant in all three matters. With her on the briefs were *Brian M. Boynton*, Acting Assistant Attorney General; *Jeanne E. Davidson*, Director; *Tara K. Hogan*, Assistant Director; *Stephen C. Tosini*, Senior Trial Counsel; and *Kyle S. Beckrich*, Trial Attorney. Of counsel on the papers for Defendant in all three matters was *Kimberly Hsu*, Office of Chief Counsel for Industry & Security, U.S. Department of Commerce of Washington, DC.

*Paul C. Rosenthal*, Kelley Drye & Warren LLP of Washington, DC, for Plaintiff AM/NS Calvert LLC in Court No. 21-00005. With him on the briefs were *R. Alan Luberda*, *Joshua Morey*, and *Julia A. Kuelzow*.

*Sanford Litvack*, Chaffetz Lindsey LLP of New York, NY, for Plaintiff California Steel Industries, Inc., in Court No. 21-00015. With him on the briefs were *Andrew L. Poplinger*, *R. Matthew Burke*, and *Rebecca Meyer*.

*Craig A. Lewis*, Hogan Lovells US LLP of Washington, DC, for Plaintiff Valbruna Slater Stainless, Inc., in

Court No. 21-00027. With him on the briefs were *H. Deen Kaplan*, *Maria A. Arboleda*, *Nicholas W. Laneville*, and *Molly B. Newell*.

*Baker*, Judge: Invoking this court's residual jurisdiction, three domestic importers bring Administrative Procedure Act challenges to the Department of Commerce's refusal to exclude certain steel products from national security tariffs and seek court-ordered refunds of duties that they paid. Defendant moves for voluntary remand without confessing error, representing that the Department's reconsideration might afford Plaintiffs the relief they seek and make adjudication of their APA claims unnecessary.

Plaintiffs object, pointing to recent litigation in which the government argued that no relief is available as a matter of law for entries that have finally liquidated. They explain that under the government's theory, remand would be pointless as to most of their entries at issue, which so liquidated after Commerce denied their exclusion requests.

To resolve that threshold issue, the court ordered the parties to address whether any relief is available as to Plaintiffs' finally liquidated entries. In response, the government argues that these cases are largely, if not entirely, moot because the court lacks authority to order reliquidation (refunds) as to such entries as a matter of law or at least on these facts. The government belatedly acknowledges that under its theory, remand—whether voluntary without confessing error or court-ordered after a finding of an APA violation—

would not provide any practical relief to Plaintiffs as to their finally liquidated entries.

As explained below, Defendant's challenge to the court's authority to order reliquidation is not a mootness question but instead goes to the merits. Viewing that challenge as a motion for partial summary judgment, the court denies it. Upon a finding of unlawful agency action in a case properly brought under the CIT's residual jurisdiction, the APA authorizes injunctive relief requiring reliquidation of finally liquidated entries because no "other statute . . . expressly or impliedly forbids" such relief. 5 U.S.C. § 702. The government also fails to show how ordinary equitable principles bar such relief here.

Finally, the court grants Defendant's requested voluntary remands, subject to certain conditions. One of them is that if Commerce issues the requested exclusions, it must make Plaintiffs whole. To do so, the Department must instruct U.S. Customs and Border Protection to honor the exclusions as to any entries that had not finally liquidated when those requests were originally denied. The court imposes this condition to prevent Defendant from using voluntary remand to dodge relief that Plaintiffs could obtain by successfully litigating their APA claims.

I

A

Federal law requires Customs to classify all imported merchandise under the Harmonized Tariff Schedule of the United States (HTSUS), 19 U.S.C.

§ 1202. *See* 19 U.S.C. § 1500(b) (requiring Customs to "fix the final classification and rate of duty applicable to [imported] merchandise"). Customs's classification "is critical because the applicable duty, or tariff, can vary considerably depending on which HTSUS subheading applies." *ARP Materials, Inc. v. United States*, 520 F. Supp. 3d 1341, 1346 (CIT 2021), *aff'd*, 47 F.4th 1370 (Fed. Cir. 2022).

To assist Customs with classification, the regulatory scheme requires an importer to file a statement—an "entry"—declaring the "value, classification[,] and rate of duty applicable to the merchandise." 19 U.S.C. § 1484(a)(1)(B). Concurrent with making an entry, "the importer must deposit estimated duties and fees with Customs" based on the information supplied in the declaration. *ARP*, 520 F. Supp. 3d at 1347.

Later, "Customs 'liquidates' the entry to make a final computation or ascertainment of duties owed on that entry of merchandise." *Id.* (cleaned up) (citing 19 C.F.R. § 159.1 and 19 U.S.C. § 1500). Liquidation is a true-up process following which "Customs either collects any additional amounts due, with interest, if the importer's deposit was lower than the final assessment or refunds any excess deposit, with interest, if the deposit was higher than the final assessment." *Id.* (citing 19 U.S.C. § 1505(b)).

If Customs does not liquidate an entry, liquidation occurs after one year by operation of law. *See* 19 U.S.C. § 1504(a)(1) (providing that an entry "shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted by the importer of record"

unless, within one year of entry, Customs liquidates the entry, or liquidation is either extended[1] or suspended[2]).

If an importer believes Customs erred in liquidating an entry or that a deemed liquidation was incorrect, the importer must file a protest within 180 days, *see* 19 U.S.C. § 1514(c)(3)(A), or else lose the right to challenge the liquidation results, *see id.* § 1514(a). As used in this opinion, "finally liquidated" means a liquidated entry that was not timely protested.

A timely "protest challenging classification may lead to 'reliquidation.' " *ARP*, 520 F. Supp. 3d at 1347. "[R]eliquidation is the re-calculation [by Customs] of the duties . . . accruing on an entry." *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1310 n.8 (Fed. Cir. 2004) (cleaned up). If that re-calculation determines that the importer overpaid duties, Customs refunds them. *See* 19 U.S.C. § 1520(a)(1).

---

[1] Customs may "extend the period in which to liquidate an entry" in certain circumstances, including when an importer "requests such extension and shows good cause therefor." 19 U.S.C. § 1504(b)(2); *see also* 19 C.F.R. § 159.12(a)(1)(ii) (providing that an importer shows "good cause" for extending the liquidation period upon demonstrating "that more time is needed to present to [Customs] information which will affect the pending action, or there is a similar question under review by [Customs]").

[2] Suspension stops the liquidation clock until "remov[ed]" by the relevant agency or "a court with jurisdiction over the entry." 19 U.S.C. § 1504(d). Suspension occurs only when "required by statute or court order." *Id.*; *see also* 19 U.S.C. § 1504(a)(1) (same).

On the other hand, if Customs denies a timely protest, an importer's only recourse is to timely bring an action in this court. *See* 19 U.S.C. § 1514(a) (authorizing suit in the CIT to challenge protest denials); 28 U.S.C. § 2631(a) (same).

B

Section 232 of the Trade Expansion Act of 1962 authorizes the President to restrict imports of goods "so that such imports will not threaten to impair the national security." 19 U.S.C. § 1862(c)(1)(A)(ii). The President exercised that authority in 2018 to impose a 25 percent tariff on imports of certain steel products. *See* Proclamation 9705 of March 8, 2018, *Adjusting Imports of Steel into the United States*, 83 Fed. Reg. 11,625 (Mar. 15, 2018).

Proclamation 9705 also directs the Secretary of Commerce to exclude imports from the tariff if they meet certain criteria. *Id.* at 11,627 cl. 3. Such relief may be granted "only after a request for exclusion is made by a directly affected party located in the United States." *Id.*

The President later amended Proclamation 9705 to make granted exclusions retroactive to entries made on or after "the date the request for exclusion was posted for public comment." Proclamation 9711 of March 22, 2018, *Adjusting Imports of Steel into the United States*, 83 Fed. Reg. 13,361, 13,364 cl. 7 (Mar. 28, 2018). He also amended Proclamation 9705 to make such retroactive relief available only for entries "with respect to which liquidation is not final."

Proclamation 9777 of August 29, 2018, *Adjusting Imports of Steel into the United States*, 83 Fed. Reg. 45,025, 45,028 cl. 5 (Sept. 4, 2018).

Commerce duly issued an interim final rule allowing U.S. importers to request an exclusion from Section 232 duties for imports satisfying criteria set by the President. *Requirements for Submissions Requesting Exclusions from the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel into the United States and Adjusting Imports of Aluminum into the United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum*, 83 Fed. Reg. 12,106, 12,110 (Dep't Commerce Mar. 19, 2018); *see* 15 C.F.R. Pt. 705, Supp. 1. When the Department approves an exclusion request under this rule, "[c]ompanies are able to receive retroactive relief on granted requests dating back to the date of the request's submission on unliquidated entries." 15 C.F.R. Pt. 705, Supp. 1 (h)(2)(iii)(A).

Exclusions are not self-executing, because Commerce "does not provide refunds on tariffs." 15 C.F.R. Pt. 705, Supp. 1 (h)(2)(iii)(B). Instead, the Department assigns a product exclusion number, which an importer can "rely" upon to seek relief from Customs effective five business days after the grant of an exclusion. 15 C.F.R. Pt. 705, Supp. 1 (h)(2)(iii)(A).

Armed with an exclusion number, an importer must "provide any information that may be required, and in such form, as is deemed necessary by [Customs]." Proclamation 9705, *Annex (U.S. Note 16(d))*, 83 Fed. Reg. at 11,630 cl. 16(d); *see* 15 C.F.R. Pt. 705,

Supp. 1 (h)(3)(ii). This information enables Customs "to determine whether an import is within the scope of an approved exclusion request." 15 C.F.R. Pt. 705, Supp. 1 (h)(3)(ii).

Customs advises an importer with exclusion numbers to submit a post-summary correction[3] "to request a refund on applicable previous imports of excluded products," so long as the relevant entry has not liquidated. U.S. Customs and Border Protection, Cargo Systems Messaging Service,[4] *CSMS #18-000378—UPDATE: Submitting Imports of Products Excluded from Duties on Imports of Steel or Alumin[um]* (June 12, 2018).[5] "If the entry has already liquidated, importers may protest the liquidation." *Id.* Customs also explains that exclusions may be used only for "unliquidated entries and for entries that are liquidated but where the liquidation is not final and the protest

---

[3] Customs explains that a post-summary correction allows the importer "to electronically correct entry summaries prior to liquidation." U.S. Customs and Border Protection, *Post Summary Corrections*, https://www.cbp.gov/trade/ programs-administration/entry-summary/post-summary-correction. Thus, an importer that successfully obtains a Section 232 exclusion from Commerce may submit a post-summary correction to Customs amending the applicable HTSUS heading assigned at entry.

[4] According to the government, "[t]he CSMS is a messaging system that [Customs] uses to inform subscribing members of the trade community about technical news and updates on [Customs]'s automated systems used to process merchandise entered into the United States." Case 21-5, ECF 62, at 7 n.2.

[5] https://content.govdelivery.com/accounts/USDHSCBP/bulletins/1f6cce3.

period has not expired." U.S. Customs and Border Protection, Cargo Systems Messaging Service, *CSMS #42566154—Section 232 and Section 301—Extensions Requests, PSCs, and Protests* (May 1, 2020).[6]

Four features of this scheme are salient here. First, Customs has a purely ministerial role except as to determining whether a given entry "is within the scope of an approved exclusion request." 15 C.F.R. Pt. 705, Supp. 1 (h)(3)(ii). Second, an importer cannot seek relief from Customs for Section 232 duties until Commerce grants an exclusion, because the importer needs an exclusion number to either present a post-summary correction (as to unliquidated entries) or file a protest (as to liquidated entries where the 180-day protest period has not yet run). Third, after the Department denies an exclusion request, an importer has no administrative means to prevent an entry's liquidation from becoming final pending litigation challenging that denial.[7] Finally, Customs will not honor an exclusion as

---

[6] https://content.govdelivery.com/accounts/USDHSCBP/bulletins/289820a.

[7] Although Customs will extend the liquidation period at an importer's request for "good cause," *see above* note 1, in the context of litigation challenging duties imposed by the United States Trade Representative under Section 301 of the Trade Act of 1974, 19 U.S.C. § 2411(a)(1), Customs advised importers that "pending litigation . . . is not sufficient to show good cause." U.S. Customs and Border Protection, Cargo Systems Messaging Service, *CSMS #50264295— Guidance for Liquidation Extension Requests and Protests Based on Pending Section 301 Litigation In re Section 301 Cases, Court of International Trade No. 21-00052* (Dec. 2, 2021), https://content.govdelivery.com/accounts/USDHSCBP/bulletins/2fef8e7. The government has not suggested that Customs would

to entries that have finally liquidated by the time an importer seeks relief.

## II

Plaintiffs, three domestic importers that paid Section 232 tariffs, allege that Commerce violated the APA in denying their exclusion requests by not considering relevant factors and evidence and by not providing adequate explanations for its decisions. *See* Case 21-5, ECF 2, at 17–19 (Calvert); Case 21-15, ECF 2, at 16–20 (California Steel); Case 21-27, ECF 4, at 21–22 (Valbruna).

For relief, Plaintiffs seek either a declaration that Commerce's exclusion denials violated the APA and an order requiring that Commerce instruct Customs to refund the Section 232 tariffs covered by the exclusions or a remand to the Department for further proceedings. *See* Case 21-5, ECF 2, at 19 (Calvert); Case 21-15, ECF 2, at 20 (California Steel); Case 21-27, ECF 4, at 23 (Valbruna).

Soon after Plaintiffs brought these suits, the government moved for voluntary remands without confessing error. Case 21-5, ECF 46; Case 21-15, ECF 44; Case 21-27, ECF 30. Plaintiffs opposed. Case 21-5, ECF 50; Case 21-15, ECF 47; Case 21-27, ECF 39.

---

apply any different policy in the context of litigation challenging Commerce's denials of Section 232 exclusions. *Cf.* 19 C.F.R. § 159.51 ("Liquidation of entries shall not be suspended simply because issues involved therein may be before the [CIT] in pending litigation, since the importer may seek relief by protesting the entries after liquidation.").

They observed that the government recently reversed its long-held position that in cases within the CIT's residual jurisdiction, the court has authority to order re-liquidation of finally liquidated entries. According to Plaintiffs, if the government's new theory is correct, any remand for reconsideration would be futile as to such entries.[8] They therefore asked the court to resolve that threshold question before entertaining the government's remand motions. *See* Case 21-5, ECF 50, at 13–14 (Calvert); Case 21-15, ECF 47, at 26–27 (California Steel); Case 21-27, ECF 39, at 21–27 (Valbruna).

---

[8] The extent to which the entries at issue have finally liquidated is neither alleged in the pleadings nor indicated in the agency record. According to admissions in Plaintiffs' supplemental briefing, all of Calvert's and California Steel's entries at issue have finally liquidated. *See* Case 21-5, ECF 64 and ECF 70; Case 21-15, ECF 75. Many, but not all, of Valbruna's entries at issue have also finally liquidated. *See* Case 21-27, ECF 68. It appears that most, if not all, of Plaintiffs' entries that are finally liquidated did so after Commerce denied their exclusion requests.

Although in APA cases the court is ordinarily confined to considering facts in the agency record, *see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379–80 (Fed. Cir. 2009), Plaintiffs' admissions bear on the *relief* that the court may order and thus may be considered for that limited purpose. *See CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 483–84 (2013) (explaining that in APA cases "evidence [respecting relief] is admitted, not as a supplement to the administrative record, but as part of this court's record" for purposes of determining whether equitable relief is appropriate).

The court then directed the government to address whether injunctive relief is available as to finally liquidated entries and whether remand serves any purpose if such relief is not available. Case 21-5, ECF 51.[9] In response, the government asserted that "the remedy of reliquidation is not available in these case[s] under the relevant statutory framework." ECF 54, at 6. The government further suggested that it is "not aware of what real-world value or practical benefit a plaintiff might derive from a granted exclusion, in the absence of any unliquidated entries that an importer could seek to apply the exclusion against." *Id*. at 20.

After an unsuccessful referral to mediation, the court ordered the parties to address whether these cases are moot as to Plaintiffs' finally liquidated entries. ECF 61. The government responded that such claims are moot, *see* ECF 62, at 15, which Plaintiffs disputed, *see* ECF 63. The court heard oral argument and received supplemental briefing on the relevant implications, if any, of *Voestalpine USA Corp. v. United States*, 578 F. Supp. 3d 1263 (CIT 2022). *See* ECF 77 (Plaintiffs), ECF 78 (government).

### III

Defendant's supplemental briefing, which the court treats as motions to dismiss for lack of subject-matter jurisdiction, *see* USCIT R. 12(b)(1), or for failure to

---

[9] For the rest of this opinion, citations to documents identical on all three dockets refer only to the filing in Case 21-5.

state a claim and for judgment on the pleadings,[10] *see* USCIT R. 12(b)(6), USCIT R. 12(c), in effect raises two questions: Are these cases moot as to finally liquidated entries? If not, do Plaintiffs state a cognizable claim for injunctive relief for those entries?

## A

"Subject-matter jurisdiction" is "the courts' statutory or constitutional *power* to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (emphasis in original); *see also ARP*, 520 F. Supp. 3d at 1354 n.25 (quoting *Umanzor v. Lambert*, 782 F.2d 1299, 1301 n.2 (5th Cir. 1986) (Gee, J.) ("Whether there exists an Article III case or controversy, and thus Constitutional subject-matter jurisdiction, is analytically distinct from whether the pertinent . . . statutes confer statutory subject-matter jurisdiction.")).

Although the government only contests whether a case or controversy within the meaning of Article III exists as to Plaintiffs' finally liquidated entries, *see Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("There is thus no case or controversy, and a suit becomes moot, when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the

---

[10] The parties consent to treating the government's supplemental briefing as motions for judgment on the pleadings under USCIT R. 12(c) in Cases 21-5 and 21-15, where the government has answered, and as a motion to dismiss under USCIT R. 12(b)(6) in Case 21-27, where the government has not answered. *See* ECF 77, at 10 (Plaintiffs); ECF 78, at 2 (government).

outcome.") (cleaned up), the court nevertheless has an independent duty to assure itself that it also has statutory subject-matter jurisdiction. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."). Before turning to mootness, the court first considers its statutory jurisdiction, a question that also bears on the merits for reasons explained below.

1

Plaintiffs' complaints invoke 28 U.S.C. § 1581(i) for statutory subject-matter jurisdiction.[11] *See* Case 21-5,

---

[11] Section 1581(i) provides in relevant part:

(1) In addition to the jurisdiction conferred upon the [CIT] by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the [CIT] shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(A) revenue from imports or tonnage;

(B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(C) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(D) administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)–(h) of this section.

ECF 2, at 6 (Calvert); Case 21-15, ECF 2, at 6 (California Steel); Case 21-27, ECF 4, at 7 (Valbruna). This provision facially confers jurisdiction, as Plaintiffs assert claims that arise from Section 232 national security duties, which the President imposed "on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

Section 1581(i), however, "is a jurisdictional grant of last resort." *ARP*, 520 F. Supp. 3d at 1356. "When relief is prospectively and realistically available under another subsection of 1581, invocation of subsection (i) is incorrect. Where another remedy is or could have been available, the party asserting § 1581(i) jurisdiction has the burden to show that the remedy would be manifestly inadequate." *Sunpreme, Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018).

Thus, to determine whether § 1581(i) jurisdiction exists, the court must first "consider whether jurisdiction under a subsection other than § 1581(i) [is] available." *ARP*, 520 F. Supp. 3d at 1356 (quoting *Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1375 (Fed. Cir. 2019)). If such jurisdiction is available, the court must then "examine whether the remedy provided under that subsection is 'manifestly inadequate.' If the remedy is not manifestly inadequate, then jurisdiction under § 1581(i) is not proper." *Id.* (quoting *Erwin Hymer Grp.*, 930 F.3d at 1375).

The only other arguable basis for jurisdiction in these cases is § 1581(a), which gives the CIT "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under

section 515 of the Tariff Act of 1930." 28 U.S.C. § 1581(a). Section 515 (19 U.S.C. § 1515), in turn, provides for administrative review of protests of "decisions of the Customs Service." 19 U.S.C. § 1514(a).

"[J]urisdiction under § 1581(a) turns on whether Plaintiffs challenge an 'actual Customs decision' for purposes of 19 U.S.C. § 1514(a)(2), or instead challenge a decision of . . . something else." *ARP*, 520 F. Supp. 3d at 1358 (citation and parentheses omitted) (quoting *United States v. U.S. Shoe Corp.*, 523 U.S. 360, 365 (1998)).

To determine whether a plaintiff challenges an actual Customs decision, the court must "discern *the particular agency action* that is the source of the alleged harm . . . . This determination depends upon the attendant facts asserted in the pleadings." *Id.* at 1358–59 (cleaned up; emphasis in original) (quoting *Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1360 (Fed. Cir. 2016)).

The facts asserted in the pleadings establish that Commerce's exclusion denials are the source of the alleged harm. *See, e.g.*, Case 21-5, ECF 2 ¶¶ 13, 14 (alleging that Commerce "denied each of Calvert's exclusion requests with cursory" analysis and that consequently the company "has paid millions of dollars in duties on imports . . . covered by the exclusion requests"); Case 21-15, ECF 2 ¶ 3 (alleging that Commerce, "in complete disregard of the record evidence and of its own regulations, denied each of" California Steel's exclusion requests, "causing [it] to pay tariffs it should not have had to pay"); Case 21-27, ECF 4 ¶¶ 13,

14 (alleging that Commerce "summarily denied [Valbruna's] exclusion requests with . . . identical cursory language" causing the company "to pay nearly ten million dollars in Section 232 duties").

Protesting Customs's liquidation of their entries and challenging the denial of those protests in a § 1581(a) case would have been futile because the agency had to follow Commerce's instructions imposing Section 232 duties. *See Gilda Indus., Inc. v. United States*, 446 F.3d 1271, 1276 (Fed. Cir. 2006) (holding that § 1581(a) jurisdiction was inadequate where Customs had no authority to overturn or disregard duties imposed by the United States Trade Representative because "Customs would have no authority to grant relief in a protest action challenging the imposition of the duty").[12] The court therefore concludes that § 1581(a) jurisdiction was unavailable or was "manifestly inadequate," such that § 1581(i) provides statutory jurisdiction over Plaintiffs' challenges to Commerce's exclusion denials.

---

[12] In *ARP*, by contrast, because the plaintiffs challenged classification decisions by Customs at liquidation applying Section 301 duties that Commerce's exclusion *grants* rendered invalid, § 1581(a) jurisdiction attached because those decisions were protestable. *See* 520 F. Supp. 3d at 1360–61. Similarly, in *Environment One Corp. v. United States*, where a plaintiff challenged Customs's classification decision that failed to apply a Section 301 exclusion, "the source of Plaintiff's harm" was "Customs' classification decision and Plaintiff's path to relief [was] to challenge [that] decision through the protest procedure." 627 F. Supp. 3d 1349, 1361 (CIT 2023).

2

A case is moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin*, 568 U.S. at 172 (quoting *Knox v. Serv. Emps.*, 567 U.S. 298, 307 (2012)). The government argues that Plaintiffs' claims as to their finally liquidated entries are moot because the court may not order Commerce to instruct Customs to reliquidate those entries. *See* ECF 62, at 3; *see also id.* at 15–45.

A case is not necessarily moot, however, simply because "the District Court lacks the authority to [grant relief] either under [the statute creating the cause of action] or pursuant to its inherent equitable powers." *Chafin*, 568 U.S. at 174. "[T]hat argument—which goes to the meaning of the [statute creating the cause of action] and the legal availability of a certain kind of relief—confuses mootness with the merits." *Id.* Unless a claim for relief can "be dismissed as so implausible that it is insufficient to preserve jurisdiction," *id.* (citing *Steel Co.*, 523 U.S. at 89), the "prospects of success are . . . not pertinent to the mootness inquiry." *Id.*

Here, the government does not—nor could it—characterize Plaintiffs' claim that the court may order Commerce to instruct Customs to reliquidate their finally liquidated entries as "immaterial and made solely for the purpose of obtaining jurisdiction or . . . wholly insubstantial and frivolous." *Steel Co.*, 523 U.S. at 89 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)). As explained below, there is substantial authority—far more than necessary under the permissive standard of *Bell*—that the court possesses such

authority under the APA in cases properly brought under § 1581(i).

Whatever questions may exist as to the court's authority under the APA to order reliquidation as to finally liquidated entries, *cf. In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1366 (CIT 2021) (stating that the Federal Circuit "has raised doubts about the CIT's authority" to do so), they do not render a claim for such relief so insubstantial as to deprive the court of its constitutional jurisdiction. *Cf. Voestalpine*, 578 F. Supp. 3d at 1275 (concluding that a challenge to "reliquidation as a form of relief" is a merits question that should not be viewed "through the lens of mootness"). The court therefore denies Defendant's motions to dismiss Plaintiffs' claims for injunctive relief as to finally liquidated entries for lack of subject-matter jurisdiction.

B

Because the government's argument that relief is unavailable as to finally liquidated entries implicates the merits, the court turns to Defendant's motions (so construed) to dismiss for failure to state a claim under USCIT R. 12(b)(6) and for judgment on the pleadings under USCIT R. 12(c). Since the parties rely on undisputed admissions outside the pleadings that some or all of Plaintiffs' entries at issue have finally liquidated in each of these cases, *see above* note 8, the court treats

the motions as being for partial summary judgment under USCIT R. 56.[13]

1

The government argues that the court lacks authority to order Commerce to instruct Customs to reliquidate entries in all cases brought under this court's residual § 1581(i) jurisdiction. *See* ECF 62, at 16–34. The government asserts that the Federal Circuit's opinion in *Shinyei* recognizing the availability of such relief was wrongly decided and that later circuit precedent calls that decision into doubt. Essentially, the government contends that *Shinyei* should be confined to its facts pending its overruling by the Federal Circuit, which the government plainly intends to seek. The

---

[13] When the court considers whether to grant equitable *relief* in an APA action, it does so de novo, and thus does not sit as an appellate court as it does when it reviews agency action. *Cf. CW Gov't Travel*, 110 Fed. Cl. at 483–84. In that context, USCIT R. 56 (governing summary judgment in de novo proceedings) rather than USCIT R. 56.1 (governing judgment on the agency record in APA proceedings) necessarily applies to challenges to the court's authority to grant equitable relief. Because the parties have presented "matters outside the pleadings," the court "must" treat the government's motions for failure to state a claim and for judgment on the pleadings as being for partial summary judgment under USCIT R. 56. *See* USCIT R. 12(d); *cf. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 & n.6 (7th Cir. 1996) (a district court that relies on admissions outside the pleadings in considering a motion to dismiss must treat the motion as one for summary judgment).

court first examines *Shinyei* and then considers how the court of appeals has since treated it.

a

According to the government, the "rule of finality of liquidation is not limited to protestable [Customs] decisions" under 19 U.S.C. § 1514(a). *Id.* at 18. Relying on *Zenith Radio Corp. v. United States*, which held that in a § 1581(c)[14] action challenging antidumping or countervailing duties the "statutory scheme has no provision permitting reliquidation," 710 F.2d 806, 810 (Fed. Cir. 1983), the government contends that "reliquidation generally should not be available in a successful [APA] challenge under section 1581(i) either." ECF 62, at 20.

The government argues that the deemed liquidation provisions of 19 U.S.C. § 1504(a)(1) "broadly codif[y] the rule of finality with respect to liquidations" because the statute " 'has no provision permitting reliquidation after . . . liquidation . . . .' " *Id.* at 21 (quoting *Zenith*, 710 F.2d at 810). The government asserts that given this "rule of finality" in § 1504(a)(1), "Congress'[s] decision to codify the rule of finality" in §§ 1514(a) (governing protests of decisions of Customs) and 1516a (antidumping and countervailing duty cases) "should not be interpreted as *limiting* the rule of finality *only* to those circumstances." *Id.* at 22 (emphasis in original). Based on this reading of the

---

[14] This provision confers exclusive jurisdiction on the CIT "of any civil action commenced under section 516A [(19 U.S.C. § 1516a)] or 517 [(19 U.S.C. § 1517)] of the Tariff Act of 1930." 28 U.S.C. § 1581(c).

statutory scheme, the government contends that the Federal Circuit's opinion in *Shinyei*, though binding, was "wrongly decided." *Id.* at 26.

*Shinyei* arose out of an administrative review of an antidumping order in which Customs, at Commerce's erroneous direction, liquidated certain entries at a higher rate than set in the Department's final determination and approved by the CIT's final judgment. *See* 355 F.3d at 1303. Shinyei filed a § 1581(i) action under the APA[15] alleging that Commerce's instructions violated 19 U.S.C. § 1675(a)(2)(C) and seeking reliquidation at the correct rate. *See* 355 F.3d at 1305 (observing that Shinyei's cause of action was brought under APA § 702).

---

[15] Section 1581(i) merely confers residual jurisdiction on the CIT; it does not create a cause of action. As *Shinyei* recognized, *see* 355 F.3d at 1305, plaintiffs properly invoking § 1581(i) challenge agency action under the cause of action created by the APA's general statutory review provisions. *See* 28 U.S.C. §§ 2631(i) (authorizing "any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5" to bring a "civil action" under the CIT's residual § 1581(i) jurisdiction), 2640(e) (requiring the CIT to apply the standard of review in 5 U.S.C. § 706 in civil actions brought under § 1581(i)); *see also* 5 U.S.C. §§ 701–06; 33 Wright & Miller, *Federal Practice & Procedure* § 8302 (2d ed. Apr. 2023 update); *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1344 (Fed. Cir. 2011) (explaining that the APA, *inter alia*, "creates a right of judicial review, even in the absence of a review-authorizing statute, for 'final agency action' for which there is no other adequate remedy in a court").

The government conceded statutory subject-matter jurisdiction[16] but contended that no relief was available under APA § 702 because section 516A of the Tariff Act as construed in *Zenith* and the protest statute (§ 1514) barred the CIT "from granting the requested relief." *Id.* at 1306; *see also id.* (quoting 5 U.S.C § 702, which precludes relief "*if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought*") (emphasis in original).

The court of appeals rejected the government's *Zenith* argument, reasoning that an action challenging Commerce's "instructions on the ground that they do not correctly implement" the results of an administrative review "is not an action defined under section 516A of the Tariff Act." *Id.* at 1309 (quoting *Consol.*

---

[16] The Federal Circuit observed that Shinyei properly invoked the CIT's residual jurisdiction because the only other arguable bases for jurisdiction, §§ 1581(a) and 1581(c), were inapplicable. Commerce, not Customs, made the challenged decision (thus foreclosing § 1581(a) jurisdiction), and that decision was not a "reviewable determination" under the antidumping and countervailing duty statute, section 516A of the Tariff Act (thereby precluding § 1581(c) jurisdiction). *Id.* at 1304–05. The CIT's residual jurisdiction therefore attached because Shinyei's challenge to Commerce's liquidation instructions was a challenge to "administration and enforcement" of the Department's final results in an antidumping proceeding. *Id.* at 1305 (quoting 28 U.S.C. § 1581(i)(4) (now § 1581(i)(1)(D)). The government did "not argue that jurisdiction under section 1581(i) was improper," *id.*, but rather that the CIT's "jurisdiction . . . was divested by liquidation of the subject entries," *id.*, i.e., moot for purposes of constitutional subject-matter jurisdiction.

*Bearings Co. v. United States*, 348 F.3d 997, 1002 (Fed. Cir. 2003)). "Section 516A is limited on its face to the judicial review of 'determinations' in countervailing duty and antidumping duty proceedings" and "provides the injunction and liquidation remedies" addressed in *Zenith*. *Id*. That statutory scheme was "inapplicable" to Shinyei's "APA challeng[e]" to "Commerce instructions as in violation of section 1675(a)(2)(C)." *Id*.

The Federal Circuit similarly dispatched the government's reliance on the protest statute, reasoning that no provision in the Tariff Act "provides that liquidations are final except within the narrow confines of section 1514; the statute's discussion of finality relates to decisions of Customs." *Id*. at 1311. Because nothing "in the statute or legislative history . . . would support such a reading," the court further rejected "the suggestion that the statute's silence as to reliquidation in the context of Commerce error can be construed as a prohibition of reliquidation in such cases." *Id*. at 1311–12. Indeed, the legislative history "suggest[ed] quite the opposite." *Id*. at 1311 n.9.

Moreover, reading an implied prohibition of court-ordered reliquidation into the statute would conflict with the CIT's "broad remedial powers." *Id*. at 1312.[17] It would also "preclude enforcement of court orders as

---

[17] *See* 28 U.S.C. §§ 2643(c)(1) (as relevant here, authorizing the CIT to "order any other form of relief that is appropriate in a civil action"), 1585 (stating that the CIT "shall possess all the powers in law and equity of, or as conferred by statute upon, a district court").

to duty determinations as soon as entries subject to those orders had liquidated, even where liquidation" failed to "implement[ ] the court['s] determinations." 355 F.3d at 1312.

In sum, the court of appeals held that "[b]ecause the [Tariff Act] does not '*impliedly forbid* the [reliquidation] relief which [Shinyei] sought' under the APA, the action is not moot." *Id.* (brackets omitted and emphasis added) (quoting 5 U.S.C. § 702). The court remanded for the CIT to "reach the merits . . . to determine if Shinyei is indeed entitled to the requested relief." *Id.*[18]

*Shinyei* thus turned on its reading of APA § 702, which "generally waives the Federal Government's immunity from a suit 'seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority.' " *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702). But that "waiver of immunity . . . does not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought' by the plaintiff." *Id.* (quoting 5 U.S.C. § 702). Thus, plaintiffs may not "exploit[] the APA's waiver to

---

[18] The Federal Circuit later extended its reasoning in *Shinyei* to entries deemed liquidated under 19 U.S.C. § 1504(a)(1). *See Shinyei Corp. of Am. v. United States*, 524 F.3d 1274, 1284 (Fed. Cir. 2008) ("Nothing in the deemed-liquidation statute forbids [reliquidation] relief on the facts as alleged.").

evade limitations on suit contained in other statutes." *Id.*

Like Shinyei, Patchak sought relief under the APA, alleging that the Interior Department's decision to take title to certain land in trust on behalf of an Indian tribe violated the Indian Reorganization Act. *Id.* at 211–12. The government contended that another statute, the Quiet Title Act (QTA), barred such relief. The QTA waives the government's sovereign immunity for suits "asserting a 'right, title, or interest' in real property that conflicts with a 'right, title, or interest' the United States claims." *Id.* at 215 (quoting 28 U.S.C. § 2409a(d)). But it also contains an exception, one that restored the government's immunity as to "trust or Indian lands." *Id.* (quoting § 2409a(a)). The government argued that this exception "satisfie[d] the APA's carve-out [in § 702] and so forb[ade] Patchak's suit." *Id.*

The Supreme Court disagreed, reasoning that the "QTA's 'Indian lands' clause does not render the Government immune because the QTA addresses a kind of grievance different from the one Patchak advances." *Id.* at 217; *see also id.* at 216 ("When a statute 'is not addressed to the type of grievance which the plaintiff seeks to assert,' then the statute cannot prevent an APA suit.") (quoting H.R. Rep. No. 94–1656, p. 28 (1976), 1976 U.S.C.C.A.N. 6121, 6148 (May 10, 1976, letter of Asst. Atty. Gen. A. Scalia)). Patchak's suit "lack[ed] a defining feature of a QTA action" because he did not seek to possess the land in question. *Id.* at 220. Because his suit was not a "disguise[d]" QTA action, "the QTA's limitation of remedies ha[d] no

bearing," and the "APA's general waiver of sovereign immunity instead applie[d]." *Id.* at 220–21.

*Patchak* vindicates *Shinyei*'s reading of APA § 702. Because neither section 516A of the Tariff Act, 19 U.S.C. § 1516a, nor the protest statute, *id.* § 1514, is "addressed to the type of grievance" that Shinyei asserted—Commerce's issuance of erroneous liquidation instructions—the APA authorized an injunction requiring the Department to instruct Customs to reliquidate the company's entries.[19] *See* 5 U.S.C. § 703 (authorizing "mandatory injuncti[ve]" relief in APA actions); *see also* 33 Wright & Miller, *Federal Practice and Procedure* § 8385 (2d ed. Apr. 2023 update) ("Plaintiffs using the [APA's] scheme of general statutory review to challenge agency action commonly seek

---

[19] Although the government did not argue in *Shinyei*, as it does here, that the liquidation provisions of 19 U.S.C. § 1504 preclude court-ordered reliquidation in APA actions, *Patchak* forecloses that argument. Unlike § 1516a, which as *Shinyei* noted allows for "judicial review of 'determinations' in countervailing duty and antidumping duty proceedings," 355 F.3d at 1309, and § 1514, which provides for administrative protests of decisions of Customs, § 1504 does not create a judicial or administrative remedy and thus does not address *any* grievance. *Cf.* 5 U.S.C. § 702 ("Nothing herein . . . confers authority to grant relief *if any other statute that grants consent to suit* expressly or impliedly forbids the relief which is sought.") (emphasis added). Rather than authorizing a remedy—much less *limiting* any such remedy—for any "grievance," § 1504 is a mere administrative housekeeping provision that ensures that liquidation is not delayed indefinitely by any failure of Customs to liquidate an entry.

injunctive and/or declaratory relief, as authorized by § 703 of the APA.").

Along with vindicating *Shinyei*, *Patchak*'s logic necessarily means that in *all* cases properly brought under this court's residual jurisdiction, equitable relief, including an injunction requiring reliquidation, is available under the CIT's "broad remedial powers." *Shinyei*, 355 F.3d at 1312. That's because when a plaintiff properly invokes the CIT's § 1581(i) jurisdiction, no other statute *can* be "addressed to the type of grievance" for which the plaintiff seeks relief. *Patchak*, 567 U.S. at 216.[20] Contrary to the government's argument, *see* ECF 62, at 35–36, an order requiring Commerce to instruct Customs to reliquidate a plaintiff's entries, *is* available "as a garden variety remedy" in any case properly brought under § 1581(i). *Cf. Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) ("Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.") (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)).

---

[20] Even if another statute speaks to "the same type of grievance the plaintiff asserts in his suit," for the APA § 702 carve-out to apply the statute must "deal 'in particularity' with the claim" and "afford the 'exclusive remedy' for that type of claim/grievance." *Cambranis v. Blinken*, 994 F.3d 457, 463 (5th Cir. 2021) (citing *Patchak*, 567 U.S. at 216). When a case is properly brought under the CIT's residual § 1581(i) jurisdiction, these additional requirements are irrelevant because no other statute can be addressed to the same type of grievance the plaintiff asserts.

But to say that equitable relief is available under the APA in all § 1581(i) cases does not mean that such relief is available as of right. Instead, such relief is subject to ordinary equitable principles, no more and no less. *See Webster v. Doe*, 486 U.S. 592, 604–05 (1988) (observing that "traditional equitable principles" govern "equitable remedies sought" in APA cases) (citing *Romero-Barcelo*); *see also* 3 Koch & Murphy, *Administrative Law & Practice* § 8:31 (3d ed. 2020) ("[I]njunctive relief under the APA is controlled by principles of equity . . . ."); *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995) (same); *cf. Ford Motor Co. v. NLRB*, 305 U.S. 364, 373 (1939) ("[W]hile the court must act within the bounds of the statute and without intruding upon the administrative province, it may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action.").

As explained above, Plaintiffs here properly invoked § 1581(i) jurisdiction, necessarily meaning that no other statute is "addressed to the type of grievance" they assert. Under *Patchak* and *Shinyei*, Plaintiffs therefore state a claim under the APA for injunctive relief requiring reliquidation, subject to ordinary equitable principles. The court considers those principles below.

b

The government contends that three later Federal Circuit decisions "confirm that the scope and application of *Shinyei* is unclear." ECF 62, at 29. The government primarily relies on *Ugine & Alz Belgium v.*

*United States*, 452 F.3d 1289 (Fed. Cir. 2006), an APA case brought under the CIT's residual § 1581(i) jurisdiction. There, the plaintiff sought a preliminary injunction to prevent Customs from liquidating entries according to Commerce's allegedly erroneous instructions. *Id.*

In response to the argument that preliminary relief was unnecessary because *Shinyei* permitted reliquidation, the Federal Circuit equivocated: "It is unclear . . . whether the rule of *Shinyei*" applies when a plaintiff asserts any APA claim *other than* "a violation of 19 U.S.C. § 1675(a)(2)(C) . . . ." *Id.* at 1296. The court of appeals then contrasted *Shinyei* with the facts before it, where the plaintiffs "did not cite section 1675(a)(2)(C)," but rather asserted a different violation. *Id.* "The difference between the two cases—and the possibility that *Shinyei* will not be interpreted to encompass the sort of claim at issue here—raises doubt whether [plaintiff] will have the opportunity to obtain reliquidation once its entries are liquidated . . . ." *Id.*

Because neither the CIT nor the plaintiff addressed the issue of *Shinyei* relief, and because the government would not take a position on its availability, the Federal Circuit reversed the denial of a preliminary injunction, reasoning that it was "not clear at this juncture that *Shinyei* would provide an adequate vehicle for [plaintiff] to litigate its claims before" the CIT. *Id.* at 1297. Rather than decide the issue with less than full briefing, the court reserved the question until it could be "litigated by the parties and decided by the trial court." *Id.*

As it did not reach the merits, *Ugine* does not call into doubt the availability of *Shinyei* relief, properly understood. *Shinyei* holds that in APA cases, equitable relief is available to remedy unlawful agency action so long as some other statute "does not 'impliedly forbid'" such relief. 355 F.3d at 1312 (brackets omitted) (quoting 5 U.S.C. § 702). If the plaintiff in *Ugine* properly invoked the CIT's § 1581(i) jurisdiction—a question the Federal Circuit did not address—no other statute *could* have been "addressed to the type of grievance" for which the plaintiff sought relief, *Patchak*, 567 U.S. at 216, much less "impliedly forbid" such relief.[21] In that case, reliquidation would have been available, subject to the application of ordinary equitable principles. As the government would have it, *Shinyei* is on life support, but *Patchak* instead confirms that *Shinyei* is alive and well.[22]

---

[21] Thus, the distinction between the alleged APA violations in *Shinyei* and in *Ugine* is no more relevant than the distinction between the imports at issue in those two cases. What matters under *Shinyei* is not the nature of the alleged APA *violation*, but whether any other statute " 'impliedly forbid[s]' " reliquidation as a remedy for that violation. 355 F.3d at 1312 (quoting 5 U.S.C. § 702).

[22] The government contends that *American Signature, Inc. v. United States*, 598 F.3d 816 (Fed. Cir. 2010), and *Sumecht NA, Inc. v. United States*, 923 F.3d 1340 (Fed. Cir. 2019), also cast doubt on *Shinyei*. ECF 62, at 32–34. In *American Signature*, a § 1581(i) case challenging liquidation instructions, the Federal Circuit followed *Ugine* and without any further explanation found that the "uncertain[ty]" of *Shinyei* relief supported a finding of irreparable harm for purposes of a preliminary injunction barring

2

The government further argues that "regardless of *Shinyei*'s scope," ECF 62, at 26, "its holding does not extend to the facts presented in these cases for three reasons," *id.* at 34. The court considers each in turn.

a

The government first contends "that in light of *Zenith*, 'so-called *Shinyei* relief' is best understood as relief that is necessary to protect a judgment of this Court." *Id.* (citing *Shinyei*, 355 F.3d at 1312). "Alternatively," the government argues, " '*Shinyei* relief' could be understood as limited to circumstances where Commerce issues liquidation instructions that are clearly inconsistent with its final determination." *Id.* at 35 (citing 19 U.S.C. § 1675(a)(2)(C) and *Ugine*, 452 F.3d at 1296).

---

liquidation. 598 F.3d at 828–29. Like *Ugine*, *American Signature* simply declined to address the scope of *Shinyei* relief. More importantly, *Patchak* eliminates any uncertainty about such relief.

In *Sumecht,* the Federal Circuit observed that neither *Ugine* nor *American Signature* "is a model of clarity for establishing when *Shinyei* relief may be unavailable in § 1581(i) actions . . . ." 923 F.3d at 1348. Even so, the court did not read those two decisions "as creating a presumption that, in the preliminary injunction context, *Shinyei* relief is uncertain for purposes of irreparable harm in § 1581(i) actions because such a presumption runs counter to *Shinyei*'s holding that the CIT has 'broad remedial powers,' including the ability to order reliquidation." *Id.* (quoting *Shinyei*, 355 F.3d at 1312). If anything, *Sumecht* only reinforces *Shinyei*. In any event*, Patchak* supersedes the lack of clarity in *Ugine* and *American Signature*.

The government ignores *Shinyei*'s "reasoning—its *ratio decidendi*—that allows it to have life and effect in the disposition of future cases." *Ramos v. Louisiana*, 140 S. Ct. 1390, 1404 (2020). *Shinyei*'s holding—that ordering reliquidation to remedy Commerce's erroneous liquidation instructions is "not barred by the statute, in particular sections 516A and 1514," 355 F.3d at 1312, rests on its reading of APA § 702. Under that provision, relief is available unless "*any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.*" *Id.* at 1306 (emphasis in original) (quoting 5 U.S.C. § 702); *see also id.* at 1312 (stating that the court's holding was "*[b]ecause* the statute does not 'impliedly forbid[ ] the relief which is sought' under the APA*") (emphasis added, brackets in original) (quoting 5 U.S.C. § 702). That reasoning applies with equal force here because, as Plaintiffs argue, "Congress has not in any way constrained [the CIT]'s ability to exercise its remedial powers" in *any* case properly brought under the court's residual § 1581(i) jurisdiction. ECF 63, at 10.

b

Second, the government argues that "regardless of *Shinyei*'s scope, the equitable relief afforded" in that case "does not apply here." ECF 62, at 37. Relying on *Mukand International, Ltd. v. United States*, 412 F. Supp. 2d 1312 (CIT 2005), *aff'd*, 502 F.3d 1366 (Fed. Cir. 2007), the government asserts that Plaintiffs should have filed these suits immediately after learning that Commerce denied their exclusion requests, "and obtained injunctive relief against liquidation before Customs liquidated their entries." ECF 62, at 39–

40 (brackets omitted) (quoting *Mukand*, 412 F. Supp. 2d at 1318). According to the government, Plaintiffs needed to seek such preliminary relief because "there is a 'strong presumption against reliquidation of entries.' " *Id*. at 40 (quoting *Mukand*, 412 F. Supp. 2d at 1319). By not doing so, the government charges, Plaintiffs slept on their rights. *See id*. at 40–41.

The court disagrees with *Mukand*'s suggestion that in actions properly brought under § 1581(i) there is a "presumption" against reliquidation of entries.[23] As explained above, in such actions there is no statutory limitation on the CIT's authority to grant equitable relief to remedy APA violations. The court may not apply judicially divined presumptions to deny relief otherwise authorized by the APA and consistent with ordinary equitable principles. *Cf. Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 322 (1999) (rejecting a judicially created "default rule" beyond "the broad boundaries of traditional equitable relief"); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014) ("Just as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied, it cannot limit a cause of action that Congress has created merely because 'prudence' dictates.") (citation omitted); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S.

---

[23] The court observes that in affirming *Mukand*, the Federal Circuit did not endorse the proposition that there is any "presumption" against reliquidation in actions properly brought under § 1581(i). *See* 502 F.3d 1366.

663, 667 (2014) ("[C]ourts are not at liberty to jettison Congress's judgment . . . .").[24]

As explained above, injunctive relief under the APA is subject to ordinary equitable principles, no more and no less. *See Romero-Barcelo*, 456 U.S. at 313. The government makes no contention that Plaintiffs fail to state a claim for such relief under those principles— that (1) they will suffer an irreparable injury absent reliquidation, i.e., loss of duties paid; (2) that Plaintiffs have no adequate remedy at law for that loss; (3) that, considering the balance of hardships between both sides, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (outlining requirements for permanent injunctive relief).

Instead, in substance the government invokes— though it shrinks from using the technical term— laches, "a defense developed by courts of equity . . . ." *Petrella*, 572 U.S. at 678. That defense, however, is not a free-floating doctrine allowing us to deny at will equitable relief authorized by Congress by merely

---

[24] In any event, *Mukand* is also distinguishable. In that case, the plaintiff waited over a year to seek mandamus relief after Commerce failed to issue a required scope determination in an administrative review, and the plaintiff could have sought such relief earlier. *See* 502 F.3d at 1369. Here, Plaintiffs do not seek mandamus relief, and as discussed below there was no alternative remedy available because in cases properly brought under the CIT's § 1581(i) jurisdiction, liquidation is not irreparable injury because of the court's authority to order reliquidation.

pronouncing a plaintiff guilty of "sleeping on its rights" or declaring such relief vaguely not "appropriate." *Cf.* 28 U.S.C. § 2643(c)(1) (authorizing the CIT to award "any other form of relief that is *appropriate* in a civil action") (emphasis added).

For this court to properly apply laches or otherwise withhold injunctive relief as not "appropriate," it must ground its decision in the specific "requirements of equity practice with a background of several hundred years of history." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944); *cf.* Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1180 (1989) ("Only by announcing rules do we hedge ourselves in."). In the case of the laches defense, those requirements mean satisfying its elements.

The first element of the laches defense is "delay by the claimant" that is "unreasonable and unexcused." *Cornetta v. United States*, 851 F.2d 1372, 1377–78 (Fed. Cir. 1988). Plaintiffs have not unreasonably delayed, as seeking preliminary injunctive relief would have been futile due to the absence of irreparable injury. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish," *inter alia*, "that he is likely to suffer irreparable harm in the absence of preliminary relief . . . ."). As explained above, *Patchak*'s logic establishes that reliquidation *is* available in cases properly brought under § 1581(i) if such relief adheres

to ordinary equitable principles.[25] Because "[t]he law does not require a vain and useless thing," *McMicking v. Schields*, 238 U.S. 99, 103 (1915), Plaintiffs were not required to first seek a preliminary injunction to prevent liquidation from becoming final.

Even if the government had shown that Plaintiffs had unreasonably delayed in seeking injunctive relief, it would still have to demonstrate prejudice, the second element of the laches defense. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 155 (1967) (stating in APA action for declaratory and injunctive relief that "[t]he defense of laches could be asserted if the Government is prejudiced by a delay"), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). "[T]he burden of proving prejudice rests with the defendant." *Cornetta*, 851 F.2d at 1380.

"There are two types of prejudice that may stem from delay in filing suit." *Cornetta*, 851 F.2d at 1378. The first, "defense prejudice," is some impairment to the government's ability to mount a defense. *Id*. The second, "economic prejudice, centers on consequences, primarily monetary, to the government should the claimant prevail." *Id*. Such prejudice "may arise where

---

[25] As late as 2020, the government acknowledged that under *Shinyei*, the CIT possesses the authority to order reliquidation in § 1581(i) cases. *See J. Conrad LTD v. United States*, 457 F. Supp. 3d 1365, 1379 (CIT 2020). In May 2021, however, the government for the first time announced it had "taken a close look at the issue of the availability of reliquidation under *Shinyei*" and reconsidered its position. *See In re Section 301 Cases*, Case 21-52-3JP, ECF 304, at 36 (CIT May 14, 2021).

a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1033 (Fed. Cir. 1992) (en banc), *abrogated on other grounds by SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328 (2017). Because the government has not carried its burden of showing either type of prejudice, its laches defense fails even if Plaintiffs unreasonably delayed in seeking injunctive relief.

c

Finally, the government contends that "an order directing [Customs] to reliquidate entries is beyond the scope of relief available in this cause of action." ECF 62, at 42. Although it acknowledges that the court can require Commerce to reconsider Plaintiffs' exclusion requests, the government argues that so doing would be of little practical value as to entries that have finally liquidated.[26] The government explains that the Department's scheme for administering Section 232 only permits Customs to apply exclusions to entries that have not so liquidated at the time an importer seeks a refund, which the importer cannot seek until Commerce grants an exclusion. *See id.* at 41–45; ECF 78, at 3–8. According to the government, because the Department has structured its administrative scheme

---

[26] Apart from Plaintiffs' admissions, the government notes that it believes that "most or all of the entries of merchandise that are the subject of plaintiffs' claims" had finally liquidated when it sought remand. *Id.* at 14.

this way, if the court remands after finding an APA violation it is nevertheless powerless to *also* order Commerce to direct Customs to apply any granted exclusions to entries that have finally liquidated. ECF 62, at 41–45; ECF 78, at 3–8.

The government relies on *Voestalpine*, in which the plaintiffs challenged Commerce's grants of defective Section 232 exclusions that Customs would not honor. *See* 578 F. Supp. 3d at 1269–70, 1276. Even though the Department nominally granted the requested exclusions, they were worthless—the administrative equivalent of bounced checks. By the time the plaintiffs detected the errors and obtained corrected exclusions, the entries in question had finally liquidated. *Id.* at 1266. Under Commerce's administrative scheme, Customs would not apply the corrected exclusions to the plaintiffs' entries. *Id.* at 1277–78.

*Voestalpine* held that a court-ordered "remand to [Commerce] is unnecessary" because the Department "provided all the relief it could when it issued the revised exclusions." *Id.* at 1277. The court further held that "court-ordered reliquidation" was not "an appropriate remedy." *Id.* In so holding, the court distinguished *Shinyei*, reasoning that the plaintiff's claim in that case arose out of 19 U.S.C. § 1675(a)(2)(C). *Id.* at 1278 (citing *Shinyei*, 355 F.3d at 1303, 1306). By contrast, the *Voestalpine* plaintiffs' "claims relate[d] to the Section 232 exclusion process established by the Executive Branch." *Id.* at 1277.

The court disagrees with *Voestalpine*. To repeat: The relevant question under *Shinyei* is not whether a

plaintiff's APA claim is founded on an alleged violation of 19 U.S.C. § 1675(a)(2)(C), but instead whether some other statute " 'impliedly forbid[s]' " the reliquidation relief sought. *Shinyei*, 355 F.3d at 1312 (quoting 5 U.S.C. § 702); *see also above* note 21. In neither *Voestalpine* nor *Shinyei* did any statute forbid the relief sought, for as explained above, in any APA case properly brought under this court's residual § 1581(i) jurisdiction, no other statute *can* be "addressed to the type of grievance which the plaintiff seeks to assert." *Patchak*, 567 U.S. at 216.

*Voestalpine* further found that injunctive relief in the form of an order requiring reliquidation was not "appropriate," 578 F. Supp. 3d at 1277, but failed to tether that conclusion to the applicable equitable principles governing such relief. *See eBay*, 547 U.S. at 391. It appears to the court that injunctive relief was appropriate in *Voestalpine* because (1) the plaintiffs there were threatened with irreparable injury absent reliquidation, i.e., loss of duties paid, *see id.*; (2) they had no adequate remedy at law for that loss, *see id.*; (3) considering the balance of hardships, a remedy in equity was warranted, *see id.*; and (4) the public interest would not have been disserved by such relief, *see id.*

In short, injunctive relief was available to the *Voestalpine* plaintiffs if Commerce's issuance of defective exclusions violated the APA.[27] As Plaintiffs here

---

[27] The court expresses no opinion on whether the *Voestalpine* plaintiffs stated a cognizable APA claim, especially

argue, *see* ECF 63, at 38, Commerce may not structure its scheme to administer Section 232 exclusions to thwart effectual judicial review of unlawful agency action.

"[O]ur Government 'has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right.' " *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 66 (1992) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) (Marshall, C.J.)). Thus, "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, *federal courts may use any available remedy to make good the wrong done.*" *Id.* (cleaned up, emphasis added) (quoting *Bell*, 327 U.S. at 684). This presumption is rebutted only when there is "clear direction to the contrary by Congress." *Id.* at 70–71.

In the APA context, that means that a district court is "justified in fashioning equitable relief that would ensure the vindication of plaintiffs' rights." *Cobell v. Norton*, 240 F.3d 1081, 1108 (D.C. Cir. 2001); *cf. United States v. Morgan*, 307 U.S. 183, 190–95 (1939) (holding that after an agency takes new action following a court challenge, a district court has the equitable authority to make injured parties whole even if the agency itself lacks authority to do so); *Benten v. Kessler*, 799 F. Supp. 281, 291 (E.D.N.Y. 1992) ("In cases

---

given that their own negligence contributed to Commerce's issuance of the defective exclusions. *See* 578 F. Supp. 3d at 1270.

where administrative misuse of procedure has delayed relief, the courts have the equitable power to order relief tailored to the situation . . . .") (citing *Ford*, 305 U.S. at 373).

Thus, if the court determines that the challenged exclusion denials violated the APA, it may order Commerce—insofar as the Department issues any exclusions on remand[28]—to instruct Customs to make Plaintiffs whole by restoring them to the positions they

[28] "[M]ak[ing] good the wrong" does not ordinarily mean "directing *how* [the agency] shall act" after its action is set aside. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original and quoting *Attorney General's Manual on the Administrative Procedure Act* 108 (1947)). If agency action violates the APA, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Here, any exercise of the court's equitable powers to make Plaintiffs whole depends on the Department granting the exclusions upon reconsideration.

The principle that upon a finding of unlawful agency action a court should remand for reconsideration has "limitations." *Greene v. Babbitt*, 943 F. Supp. 1278, 1287 (W.D. Wash. 1996). Where it would serve no valid purpose, a court "is not obligated to remand. Rather than subjecting the party challenging the agency action to further abuse, it may put an end to the matter by using its equitable powers to fashion an appropriate remedy." *Id.* at 1288. Thus, in *Voestalpine*, Commerce's issuance of corrected exclusions meant that remand was pointless. If the CIT determined the Department's issuance of defective exclusions violated the APA, *see above* note 27, the court could have ordered Commerce to direct Customs to honor the corrected exclusions without remanding.

would have occupied had their original requests been granted.[29] The court thus rejects the government's *Voestalpine* argument that even if Plaintiffs prevail on their APA challenges, Commerce's administrative scheme renders the court helpless to "make good the wrong." *Franklin*, 503 U.S. at 66 (quoting *Bell*, 327 U.S. at 684).

## IV

"Having reached the end of what seems like a long front walk," *Steel Co.*, 523 U.S. at 102, the court finally turns back to Defendant's motions for voluntary remand. In so moving "without confessing error," Case 21-5, ECF 46, at 7, the government states that Commerce "proposes, on remand, to reconsider the exclusion requests by engaging in new and independent review," *id.* at 8. In such a review, the Department "will issue new determinations to either: (1) grant the requests excluding some or all of these products from the scope of the Section 232 measure on steel imports; or (2) deny the exclusion requests." *Id.* at 1–2.

---

[29] Any relief the court might issue must be limited to entries that had not finally liquidated by the fifth business day following the Department's denial of any given exclusion—the first day Plaintiffs could have sought relief from Customs if Commerce had granted their requests. *See* 15 C.F.R. Pt. 705, Supp. 1 (h)(2)(iii)(A). As described above, even if the Department had issued the exclusions, under the administrative scheme Customs would have denied refunds for entries that had finally liquidated before the importer sought relief.

The government offers three reasons for a voluntary remand. First, in *JSW Steel (USA) Inc. v. United States*, the court reviewed an administrative record the government characterizes as "similar in reasoning and scope of analysis" to the records here and found Commerce's denial of exclusion requests to be "devoid of explanation and [to] frustrate judicial review." 466 F. Supp. 3d 1320, 1330 (CIT 2020); *see also* Case 21-5, ECF 46, at 7 (government's discussion of *JSW*). The government states that "Commerce wishes to reconsider the exclusions and to provide additional reasoning or explanation, as necessary." Case 21-5, ECF 46, at 7.

Second, the government expresses concern that the absence of documentation of Commerce's *ex parte* communications with interested parties means that "the Court may . . . conclude that the existing record is incomplete." *Id.* at 7–8. The Department therefore proposes to conduct "a new and independent review of a record limited to: (1) the original exclusion request; (2) the parties' original objections, rebuttals[,] and sur-rebuttals[;] and (3) any other information that the decision-maker considers, which will be documented in the record." *Id.* at 8. The government contends that such a procedure would mitigate any concern about what materials the Department considered and any claims that it relied on *ex parte* communications. *Id.*

Third, the government notes that because Plaintiffs seek to overturn Commerce's denials of their exclusion requests, and on remand the Department might grant some or all of those requests, "remanding for reconsideration now essentially expedites relief that [the

plaintiffs] seek[ ] and may obviate the necessity for remand (or, perhaps, any proceedings) later." *Id.* at 9 (quoting *Borusan Mannesmann Pipe U.S. Inc. v. United States*, Ct. No. 20-00012, Slip Op. 20-90, at 11, 2020 WL 3470104, at *4 (CIT June 25, 2020)).

When the government "request[s] a remand (without confessing error) in order to reconsider its previous position," this court "has discretion over whether to remand." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001). "A remand may be refused if the agency's request is frivolous or in bad faith. . . . Nevertheless, if the agency's concern is substantial and legitimate, a remand is usually appropriate." *Id.*

Setting aside for the moment whether voluntary remand on the government's terms would deny Plaintiffs any meaningful relief as to finally liquidated entries, the government's remand requests are otherwise "substantial and legitimate." *See Borusan*, Slip Op. 20-90, at 9, 2020 WL 3470104, at *4. Commerce points to the need to provide additional explanation and the possibility that its original decisions may have been influenced by undocumented *ex parte* communications or other extra-record considerations. Case 21-5, ECF 46, at 7–8.

Plaintiffs, moreover, do not seriously dispute that remand is inevitable even if they prevail. The ordinary remedy for unlawful agency conduct is a remand for reconsideration. *See Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 46 n.1 (D.C. Cir. 2013) (per curiam) ("Usually, where a district court reviews agency action under the APA, it acts as an appellate tribunal, so the

appropriate remedy for a violation is simply to identify a legal error and then remand to the agency.") (cleaned up); *see also above* note 28. The court, at least at this early stage where it has not previously remanded these matters to the Department, therefore has no power to affirmatively order Commerce to *grant* the requested exclusions.

Thus, Plaintiffs' primary objection to voluntary remand is that it threatens to deny them any meaningful relief as to finally liquidated entries, hence their request for the court to first address that question. As the government belatedly admits, voluntary remand on the terms it proposes would indeed prejudice Plaintiffs by denying them the real-world relief they seek as to finally liquidated entries—refund of their Section 232 duties. Even if Commerce granted the exclusions on voluntary remand, Customs would not honor them as to finally liquidated entries.[30]

That prejudice—denying Plaintiffs the real-world relief that they could get from the court after

---

[30] Following the Department's grant of any exclusions on unconditional voluntary remand, the court would appear to be powerless to instruct Customs to honor those exclusions as to finally liquidated entries, for at that point there would be no legal "wrong" to "make good." *Franklin*, 503 U.S. at 66 (quoting *Bell*, 327 U.S. at 684); *cf. Hedges v. Dixon County*, 150 U.S. 182, 192 (1893) ("[E]quity follows the law . . . ."); *see also* Toni M. Fine, *Agency Requests for "Voluntary" Remand: A Proposal for the Development of Judicial Standards*, 28 Ariz. St. L.J. 1079, 1107 (1996) (observing that a court forgoes any opportunity for "shaping actions taken by the agency in the remanded proceedings . . . when agency requests for remand are unqualifiedly ordered").

prevailing on the merits—justifies denying remand on the government's requested terms. *Cf. Lutheran Church-Mo. Synod v. F.C.C.*, 141 F.3d 344, 349 (D.C. Cir. 1998) (Silberman, J.) (denying voluntary remand where the agency "has not confessed error" and proposed agency action on remand would not grant relief to plaintiff); *Util. Solid Waste Activities Grp. v. Env't Prot. Agency*, 901 F.3d 414, 436 (D.C. Cir. 2018) (stating that voluntary remand may be denied when it "would unduly prejudice the non-moving party"); *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 386 (D.C. Cir. 2017) (Kavanaugh, J.) (noting that voluntary remand should not be granted when it "may instead function . . . as a dismissal of a party's [APA] claims"); Joshua Revesz, *Voluntary Remands: A Critical Reassessment*, 70 Admin. L. Rev. 361, 365 (2018) ("[V]oluntary remands—which give agencies carte blanche to proceed without judicial supervision—are an administrative law remedy uniquely at risk of abuse.").

Critically, however, the court's remand to an agency is an exercise of its equitable powers. *See Ford*, 305 U.S. at 373 ("The jurisdiction to review the orders of [an agency] is vested in a court with equity powers . . . ."); *see also Keltner v. United States*, 148 Fed. Cl. 552, 557 (2020) ("The early case law recognized that the power of the courts to remand a challenged agency action back to the agency for review was equitable in nature."). *Cf.* Ronald M Levin, *"Vacation" at Sea: Judicial Remedies and Equitable Discretion in Administrative Law*, 53 Duke L.J. 291, 323 (2003) ("For more than sixty years, courts have drawn upon the traditions of equity to support a broad understanding of the

remedial powers of federal courts in administrative law cases . . . .").

As an exercise of its equitable powers, when remanding a court can "adjust its relief to the exigencies of the case" to protect the interests of the agency in reconsidering its position, the parties and the court in judicial economy, and the plaintiffs in obtaining the ultimate relief they seek. *Ford*, 305 U.S. at 373; *cf. Hecht*, 321 U.S. at 329–30 ("The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims.").

In this context, that flexibility allows the court to condition remand on requiring Commerce, if it grants any exclusions on reconsideration, to instruct Customs to restore Plaintiffs to the same positions they would have occupied had the Department originally granted their requests, even if the relevant entries have since finally liquidated.[31] *Cf. Cook Inletkeeper v. U.S. EPA*, 400 F. App'x 239, 241 (9th Cir. 2010) (granting voluntary remand with conditions). In doing so, the court

---

[31] The court acknowledges that the predicate for imposing this condition is its conclusion that if Plaintiffs prevailed on the merits of their APA claims, the court could order Commerce to require Customs to honor exclusions even for entries that have finally liquidated since the Department denied Plaintiffs' requests. If the government's contrary argument were correct, then the court could not impose such a condition under its equitable powers, because Plaintiffs would not suffer any prejudice from unconditional remands.

can ameliorate the prejudice Plaintiffs would otherwise suffer from remands on the government's proposed terms.

Beyond Plaintiffs' concern with being denied any effective remedy, they object to the duration of the government's proposed remands.[32] They also seek to bar agency officials involved in the Department's challenged decisions from participating in reconsideration of the exclusion requests.

"Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) (cleaned up). "Accordingly, absent such constraints or circumstances, courts will defer to the judgment of an agency regarding the development of the agency record. To do otherwise would run the risk of propelling the courts into the domain which Congress has set aside exclusively for the administrative agency." *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012) (cleaned up) (citing *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976)).

---

[32] The government seeks 225 days in *Calvert*, *see* Case 21-5, ECF 46, proposed order at 1–2; 250 to 325 days in *California Steel*, *see* Case 21-15, ECF 44, proposed order at 2; and 360 days in *Valbruna*, *see* Case 21-27, ECF 30, proposed order at 2.

Moreover, the presumptions of regularity and good faith to which an administrative agency's decision-makers are entitled are not limited to retrospective review of an agency's original decision. "The possibility that some individuals working on new determinations may have worked on prior determinations in the same case is not enough to overcome the presumption of a decision-maker's honesty and integrity." *NLMK Pa., LLC v. United States*, 558 F. Supp. 3d 1401, 1406 (CIT 2022) (citing *FTC v. Cement Inst.*, 333 U.S. 683, 700–03 (1948)). Therefore, the court will not require the Department to exclude certain officials from involvement in reconsideration of Plaintiffs' requests. *Cf. id.* at 1407 n.7 ("Plaintiff's proposal seems to invite the court to supervise and thus co-author the determination with Commerce and then review that determination. The court declines the invitation.").

That said, at argument the court asked the government's counsel whether "you're in agreement with restricting and confining the record to the existing record without expanding it." Case 21-5, ECF 76, at 25:1–4. Counsel did agree: "That's right. Commerce has no intention of reopening the record." *Id.* at 25:5–6. The court accepts that representation as sufficient to bind Defendant.

Finally, the review period for new exclusion requests is normally 106 days. 15 C.F.R. Pt. 705, Supp. 1(h)(3)(i). The government characterizes Commerce's efforts on remand as "engaging in a new and indepen-

dent review." Case 21-5, ECF 46, at 8.[33] Taking the government at its word, therefore, and given the government's representation that Commerce will limit the scope of the remand to the existing administrative record, the court can see no reason why a "new and independent review" should be subject to anything other than the standard period prescribed by the regulations. Therefore, the court grants the Department 106 days to issue its remand determinations.[34]

\*    \*    \*

For the reasons explained above, the court **DE-NIES** Defendant's motions to dismiss Plaintiffs' claims for injunctive relief as to finally liquidated

---

[33] An agency has two options on remand. First, it may offer a more complete explanation of the reasoning it employed at the time of its action. "This route has important limitations. When an agency's initial explanation indicates the determinative reason for the final action taken, the agency may elaborate later on that reason (or reasons) but may not provide new ones." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1907–08 (2020) (cleaned up). Second, "the agency can deal with the problem afresh by taking *new* agency action. An agency taking this route is not limited to its prior reasons but must comply with the procedural requirements for new agency action." *Id.* at 1908 (emphasis in original) (cleaned up).

[34] The government represents that concurrent with any remand, the government will allow Plaintiffs to confer with Customs as necessary to resolve HTSUS "administrability issue[s]" in connection with certain requests by submitting new HTSUS codes to Commerce. *See* Case 21-5, ECF 46, at 10; *see also* Case 21-27, ECF 30, at 11. The court therefore also includes that condition in its remand order.

entries for lack of jurisdiction, **DENIES** Defendant's motions for partial summary judgment as to those claims, and **GRANTS** Defendant's motions for voluntary remand, subject to the conditions outlined in a separate judgment. *See* USCIT R. 58(a).[35]

Dated: September 6, 2023          /s/ *M. Miller Baker*
          New York, NY          Judge

---

[35] Although a remand is ordinarily interlocutory, the condition that Plaintiffs be made whole if Commerce grants their exclusion requests appears to render the court's order a "final decision" for purposes of 28 U.S.C. § 1295(a)(5). *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009). As required by Rule 58(a), the court therefore enters the remand order as a separate judgment.